UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 09-3441

_____

# UNITED STATES OF AMERICA

Appellee

vs.

# DARWIN MARKEITH HUGGANS

Appellant

_____

Appeal From the United States District Court
For the Eastern District of Missouri
The Honorable Catherine D. Perry, District Judge

# APPELLANT'S BRIEF

Oral Argument Requested

Michael A. Gross
Sher Corwin LLC
190 Carondelet Plaza, Suite 1100
St. Louis, Missouri 63105
Telephone: (314) 721-5200

Attorney for Appellant

## SUMMARY OF THE CASE

A grand jury charged Darwin Huggans with having conspired with unnamed other persons at unspecified times between 2001 and 2006 to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and with having attempted to possess cocaine for distribution in violation of 21 U.S.C. §§ 841(a)(1) and 846 and having taken an unspecified substantial step in furtherance of that attempt at an unspecified time between March 1 and April 12, 2007. App. at 29-30.

Mr. Huggans filed several motions seeking a bill of particulars, the dismissal of the indictment for vagueness and lack of notice, and severance of the charges. App. at 24, 27, 34, 50, 60, 129, 141. All of the motions were denied. App. at 69, 122. Mr. Huggans waived his right to trial by jury after failing to obtain severance of the charges. App. at 141, 150. The District Court found him guilty under both counts, granted the government's motion for an enhanced sentence pursuant to 21 U.S.C. §§ 841, 851, and sentenced Mr. Huggans to imprisonment for life. App. at 147, 261.

This appeal presents constitutional, evidentiary, and procedural issues of substance and merit. Mr. Huggans presently is serving a sentence of imprisonment for life within the Bureau of Prisons. He requests that each party be granted 20 minutes for oral argument of this appeal.

Appellate Case: 10-3384    Page: 2    Date Filed: 02/24/2011 Entry ID: 3759317

# TABLE OF CONTENTS

**Page**

Summary of Case    1

Table of Contents    2

Table of Authorities    3

Jurisdictional Statement    7

Issues Presented for Review    8

Statement of the Case    11

Statement of Facts    13

Summary of Argument    40

Argument    44

Conclusion    86

Certificate of Counsel    87

Certificate of Service    88

Appellate Case: 10-3384    Page: 3    Date Filed: 02/24/2011 Entry ID: 3759317

# TABLE OF AUTHORITIES

**Page**

## Cases

*Braxton v. United States,* 500 U.S. 344 (1991)                    45

*Brown v. Mississippi,* 297 U.S. 278 (1936)                        74

*Chapman v. California,* 386 U.S. 18 (1967)

*Chung v. Department of Justice,* 333 F.3d 273 (D.C.Cir. 2003)  72

*Dowling v. United States,* 493 U.S. 342 (1990)                    73

*Duncan v. Louisiana,* 391 U.S. 145 (1968)                         56

*Hamling v. United States,* 418 U.S. 87 (1974)                     43

*Irwin v. Department of Veterans Affairs,* 498 U.S. 89 (1990)   71

*Jackson v. Virginia,* 443 U.S. 307 (1979)                         57, 66

*Neder v. United States,* 527 U.S. 1 (1999)                        45

*People v. Miller,* 42 P.2d 308 (Cal. 1935)                        67

*People v. Werblow,* 148 N.E. 786 (N.Y. 1925)                      67

*Rochin v. California,* 342 U.S. 165 (1952)                        74

*Russell v. United States,* 369 U.S. 749 (1962)                    42

*Sell v. United States,* 539 U.S. 166 (2003)                       73

*Smith v. O'Grady,* 312 U.S. 329 (1941)                            43-44

*United States v. Allen,* 406 F.3d 940 (8th Cir. 2005)             45-46

Appellate Case: 10-3384    Page: 4    Date Filed: 02/24/2011 Entry ID: 3759317

**TABLE OF AUTHORITIES (Cont'd)**

**Page**

**Cases (Cont'd)**

| | |
|---|---|
| *United States v. Beggerly,* 524 U.S. 38 (1998) | 71 |
| *United States v. Bohr,* 581 F.2d 1294 (8th Cir. 1978) | 54 |
| *United States v. Boidi,* 568 F.3d 24,(1st Cir. 2009) | 61 |
| *United States v. Brockamp,* 519 U.S. 347 (1997) | 72 |
| *United States v. Burks,* 135 F.3d 582 (8th Cir. 1998) | 67 |
| *United States v. Colon,* 549 F.3d 565 (7th Cir. 2008) | 60 |
| *United States v. Cook,* 454 F.3d 938 (8th Cir. 2006) | 54-55 |
| *United States v. Delgado*, 2011 WL 248886 (5th Cir. 2011) | 60 |
| *United States v. Du Bo,* 186 F.3d 1177 (9th Cir. 1999) | 46 |
| *United States v. Garcia,* 562 F.3d 947 (8th Cir. 2009) | 41, 79-81 |
| *United States v. Hance,* 501 F.3d 900 (8th Cir. 2007) | 42, 48 |
| *United States v. Harris,* 493 F.3d 928 (8th Cir. 2007) | 49 |
| *United States v. Hawkins,* 547 F.3d 66 (2nd Cir. 2008) | 58 |
| *United States v. Helmel,* 769 F.3d 1306 (8th Cir. 1985) | 43 |
| *United States v. Hernandez,* 299 F3d 984 (8th Cir. 2002) | 52 |
| *United States v. Ivic,* 700 F.2d 51 (2nd Cir. 1983) | 51 |
| *United States v. Johnson,* 592 F.3d 749 (7th Cir. 2010) | 58 |

Appellate Case: 10-3384    Page: 5    Date Filed: 02/24/2011 Entry ID: 3759317

# TABLE OF AUTHORITIES (Cont'd)

**Page**

**Cases (Cont'd)**

*United States v. Joyce,* 693 F.2d 838 (8th Cir. 1982)     *passim*

*United States v. Key,* 717 F.2d 1206 (8th Cir. 1983)     48

*United States v. Lechuga,* 994 F.2d 346 (7th Cir. 1993)     60

*United States v. Martin,* 408 F.3d 1089 (8th Cir. 2005)     71

*United States v. Martinez,* 573 F.2d 529 (8th Cir. 1978)     54

*United States v. Matlock,* 675 F.2d 981 (8th Cir. 1982)     48

*United States v. Monholland,* 607 F.2d 1311 (10th Cir. 1979)     50, 67

*United States v. Nunn,* 940 F.2d 1128 (8th Cir. 1991)     57

*United States v. Perkins,* 937 F.2d 1397 (9th Cir. 1991)     56

*United States v. Pherigo,* 327 F.3d 690 (8th Cir. 2003)     53

*United States v. Prieskorn,* 658 F.2d 631 (8th Cir. 1981)     58

*United States v. Prentiss,* 206 F.3d 960 (10th Cir. 2000)     45-46

*United States v. Resendiz-Ponce,* 549 U.S. 192 (2007)     45

*United States v. Rischard,* 471 F.2d 105 (8th Cir. 1973)     75

*United States v. Smith,* 578 F.2d 1227 (8th Cir. 1978)     54

*United States v. Spinner,* 180 F.3d 514 (3rd Cir. 1999)     46

*United States v. U.S. Gypsum Co.,* 333 U.S. 364 (1948)     76

Appellate Case: 10-3384    Page: 6    Date Filed: 02/24/2011 Entry ID: 3759317

# TABLE OF AUTHORITIES (Cont'd)

**Page**

**Cases (Cont'd)**

*United States v. Ward,* 544 F.2d 975 (8th Cir. 1976)    75-77

*United States v. Wessels,* 12 F.3d 746, 750 (8th Cir. 1993)    42

*United States v. Wiggins,* 104 F3d 174 (8th Cir. 1997)    49

*United States v. Young,* 613 F.3d 735 (8th Cir. 2010)    68

*Washburn v. Soper,* 319 F.3d 338 (8th Cir. 2003)    72

*Wong Tai v. United States,* 273 U.S. 77 (1927)    48

*Young v. United States,* 535 U.S. 43 (8th Cir. 2002)    71

Constitution, Statutes, and Rules

U. S. CONST. amend. V    73

21 U.S.C. § 841

21 U.S.C. § 846    57

21 U.S.C. § 851    *passim*

Fed. R. Evid. 404    47

Appellate Case: 10-3384   Page: 7   Date Filed: 02/24/2011 Entry ID: 3759317

## JURISDICTIONAL STATEMENT

### (i) Factual Information

A grand jury charged Darwin Markeith Huggans with two offenses under 21 U. S. C. §§ 841(a)(1) and 846. App. at 29-30. The District Court found Mr. Huggans guilty of both offenses and sentenced him to imprisonment for life. App. at App. at 261-67. Sentence was imposed on October 7, 2009. *Id.* Mr. Huggans filed his notice of appeal on October 14, 2009. App. at 268-69.

Mr. Huggans filed a motion requesting a new trial on the basis of newly discovered evidence on July 27, 2010. App. at 270-84. The District Court denied that motion on October 19, 2010. App. at 285-86. Mr. Huggans filed a notice of appeal on October 21, 2010. App. at 287.

### (ii) Subject Matter Jurisdiction

The district courts are vested with exclusive original jurisdiction of the prosecution of any violation of federal criminal law. 18 U.S.C. § 3231.

### (iii) Appellate Jurisdiction

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The timeliness of Mr. Huggans' notice of appeal is governed by Fed.R.App.P. 4(b)(1)(A)(i), which requires that the notice of appeal be filed within 10 days after the entry of judgment.

7

# ISSUES PRESENTED FOR REVIEW

## I.

**The District Court erred in denying Mr. Huggans' motions to dismiss the indictment.**

*United States v. Resendiz-Ponce,* 549 U.S. 192 (2007)

*Hamling v. United States,* 418 U.S. 87 (1974)

*Russell v. United States,* 369 U.S. 749 (1962)

*United States v. Wessels,* 12 F.3d 746 (8th Cir. 1993)

## II.

**The District Court erred in denying Mr. Huggans' motions for a bill of particulars.**

*United States v. Hance,* 501 F.3d 900 (8th Cir. 2007)

*United States v. Harris,* 493 F.3d 928 (8th Cir. 2007)

*United States v. Joyce,* 693 F.2d 838 (8th Cir. 1982)

*United States v. Hernandez,* 299 F3d 984 (8th Cir. 2002)

Appellate Case: 10-3384    Page: 9    Date Filed: 02/24/2011 Entry ID: 3759317

## III.

**The District Court erred in denying Mr. Huggans' motion for severance and separate trials of the conspiracy and attempt charges.**

*United States v. Pherigo,* 327 F.3d 690, 693 (8th Cir. 2003)

*United States v. Martinez,* 573 F.2d 529 (8th Cir. 1978)

*United States v. Cook,* 454 F.3d 938 (8th Cir. 2006)

Fed.R.Crim.P. 14(a)

## IV.

**The evidence was insufficient to prove Mr. Huggans guilty of the conspiracy charge.**

*United States v. Nunn,* 940 F.2d 1128 (8th Cir. 1991)

*United States v. Johnson,* 592 F.3d 749 (7th Cir. 2010)

*United States v. Hawkins,* 547 F.3d 66 (2nd Cir. 2008)

*United States v. Prieskorn,* 658 F.2d 631 (8th Cir. 1981)

## V.

**The evidence was insufficient to prove Mr. Huggans guilty of the attempt charge.**

*United States v. Joyce,* 693 F.2d 838 (8th Cir. 1982)

*United States v. Burks,* 135 F.3d 582 (8th Cir. 1998)

Appellate Case: 10-3384    Page: 10    Date Filed: 02/24/2011 Entry ID: 3759317

## VI.

The District Court erred in finding that equitable tolling does not apply to the five-year limitation period provided by 21 U.S.C. § 851(e) and concluding that Mr. Huggans was not entitled to challenge the validity of drug convictions that occurred in 1990 and 1995. Alternatively, if § 851(e) is not subject to equitable tolling, the sentence enhancement provisions of § 851 violate due process when applied on the basis of convictions that fall without the limitation period and that a defendant has a substantial basis for challenging.

*Young v. United States,* 535 U.S. 43 (8th Cir. 2002)

*Irwin v. Veterans Administration,* 498 U.S. 89 (1990)

*United States v. Brockamp,* 519 U.S. 347 (1997)

21 U.S.C. § 851

## VII.

The District Court erred in denying Mr. Huggans' motion for a new trial based on newly discovered evidence.

*United States v. Ward,* 544 F.2d 975 (8th Cir. 1976)

*United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)

*Verizon Communications, Inc., v. Inverizon International, Inc.,* 295 F.3d 870, 873 (8th Cir. 2002)

## VIII.

The District Court erred in failing to review of the presentence reports of the government's convicted witnesses *in camera* to determine whether they contained exculpatory evidence or impeachment material.

*United States v. Garcia,* 562 F.3d 947 (8th Cir. 2009)

Appellate Case: 10-3384   Page: 11   Date Filed: 02/24/2011 Entry ID: 3759317

## STATEMENT OF THE CASE

### A.  Nature of the Case

A grand jury charged Darwin Huggans with having conspired with
unnamed other persons at unspecified times between 2000 and 2006 to
distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  The
indictment also charged Mr. Huggans with having attempted to possess
cocaine for distribution in violation of 21 U.S.C. §§ 841(a)(1) and 846, and
having taken an unspecified substantial step in furtherance of that attempt at
an unspecified time between March 1 and April 12, 2007.  App. at 29-30.

### B.  Course of Proceedings and Disposition Below

The District Court found Mr. Huggans guilty of both charges, granted
the government's motion for an enhanced sentence pursuant to 21 U.S.C. §
841 and 851, and sentenced Mr. Huggans to imprisonment for life.  *Id.* at
147, 261.

Mr. Huggans filed a motion seeking a new trial on the basis of newly
discovered evidence.  *Id.* at 270.  He recited his history of seeking
information regarding the members and scope of the conspiracy in which he
was supposed to have participated.  *Id.* at 275.  Mr. Huggans claimed in his
motion that the newly discovered evidence—consisting of presentence
reports pertaining to purported co-conspirators filed under seal in their

11

separate conspiracy prosecution and not produced for or otherwise available to Mr. Huggans and his trial counsel—demonstrated discrepancies in the government's evidence in the present case. *Id.* at 273-79. The District Court denied the motion. *Id.* at 285-86.

12

## STATEMENT OF FACTS

### A.  Pretrial Proceedings

#### 1.  Indictment

The original indictment in this case charged Mr. Huggans with having attempted to possess cocaine for distribution "[b]eginning in March 2007 and continuing until April 12, 2007."  App. at 22-23.  The indictment alleged that Mr. Huggans had taken a substantial step toward the completion of that crime but did not allege any detail of that purported act.  *Id.*

The government then obtained a superseding indictment.  *Id.* at 29-33. That instrument added a charge of conspiracy to possess cocaine for distribution and to distribute cocaine.  *Id.*  The conspiracy count charged that Mr. Huggans had conspired to possess and distribute cocaine "in the Eastern District of Missouri and elsewhere," "with other persons known and unknown" to the grand jury, "[b]eginning in 2000 and continuing up to [December 20, 2007]."  *Id.* at 29.  The new indictment did not name or otherwise suggest the identity of any purported co-conspirator.  It did not name or suggest other locations in which conspiratorial acts occurred.  It did not provide any particularized date or dates upon which any participation in the conspiracy by Mr. Huggans supposedly had occurred.

Appellate Case: 10-3384     Page: 14     Date Filed: 02/24/2011 Entry ID: 3759317

## 2. Motions to Dismiss Indictment

### a. Attempt Charge

Mr. Huggans moved to dismiss the attempt charge from the superseding indictment. *Id.* at 129-33. He noted the absence of any description of or other information regarding the purported "substantial step" taken in furtherance of an attempt. *Id.* at 129-30. He claimed that the indictment thus was inadequate to provide notice "of what he must be prepared to meet" and that it id not "provide him with an adequate foundation for pleading prior or acquittal or conviction in the event of a future prosecution of a similar crime purportedly committed during the same time period." *Id.* Mr. Huggans stated:

> The latter failure of the indictment is especially egregious when the grand jury has charged drug trafficking crimes against an individual whom the government characterizes as a prolific drug dealer.

*Id.* at 130.

Mr. Huggans' motion alleged that the charge "fail[ed] to afford adequate—or, for that matter, any—assurance that the grand jury fulfilled the gate-keeping function that is an essential component of its Constitutional duty." *Id.* The motion explained the latter contention as follows:

> [O]nly rank speculation could support a conclusion that the grand jury was apprised of the particular conduct upon which the government relies as proof of Mr. Huggans' purported

Appellate Case: 10-3384   Page: 15   Date Filed: 02/24/2011 Entry ID: 3759317

> attempt to possess cocaine for distribution and that the grand
> jury found that particular conduct sufficient to warrant the
> charge asserted in Count II of the indictment.

*Id.* at 133.

The government's response to Mr. Huggans' request for dismissal of
the attempt charge recited information provided to defense counsel and
memorialized in the report and recommendation of the Magistrate Judge
regarding the particulars of the attempt. *Id.* at 138. The government's
response noted the determination of the Magistrate Judge that Mr. Huggans
had been advised of the details missing from the indictment "through
discovery in this case." *Id.* at 138-39.

The District Court denied Mr. Huggans' motion. Tr. I at 102-03. The
Court explained:

> I don't think there is any surprise about what's going on here,
> and I believe they have adequately disclosed it, so I'm going to
> deny the motions to dismiss. I believe they have adequately
> disclosed and the defendant knows that's being charged and
> that it's sufficient for double jeopardy purposes, and I believe
> that . . . the indictment provides the necessary allegations to go
> forward to trial on the attempt charge, and so I'm going to deny
> that.

Tr. Jan. 15, 2009, at 102-03.

### b. Conspiracy Charge

The superseding indictment charged a conspiracy with unnamed and
unnumbered others between 2000 and 2007. App. at 29-33. Mr. Huggans

Appellate Case: 10-3384     Page: 16     Date Filed: 02/24/2011 Entry ID: 3759317

also moved to dismiss that charge. App. at 50-52, 113-15. Initially his motion was premised on the mistaken notion—derived from discovery material provided by the government—that the conspiracy to be proved at trial involved Mr. Huggans, Ricky Henderson, and Ronald Gavin. *Id.* at 50-51, 113-14. At the hearing before the Magistrate Judge, the government advised that the conspiracy charge at trial would be based on drug dealings between Mr. Huggans and Anthony Stiles from 2001 through 2006. Tr. Mar. 11, 2008, at 25-26.

The Magistrate Judge recommended that the conspiracy count not be dismissed on the basis erroneously asserted by Mr. Huggans. *Id.* at 73. In his objections to the Magistrate's report and recommendation, Mr. Huggans noted confusion and uncertainty inherent in the breadth of the indictment *versus* the particularized assertions of counsel for the government at the hearing, and asked that the conspiracy count be dismissed on that basis. App. at 114-15. The District Court denied the motion to dismiss. *Id.* at 122-23.

### 3. Motions for a Bill of Particulars

Mr. Huggans filed a motion for a bill of particulars with his first motion to dismiss the indictment. *Id.* at 27-29. He pointed out that the indictment alleged a "substantial step" toward commission of the charged

Appellate Case: 10-3384   Page: 17   Date Filed: 02/24/2011 Entry ID: 3759317

offense "[b]eginning in March 2007 and continuing until April 12, 2007," but failed to provide any detail of that conduct. *Id.* at 22-23, 27-28. A second motion for a bill of particulars, submitted after the superseding indictment had been filed, complained that both of the charges in that instrument "largely fail[] to state facts at all." *Id.* at 34-36.

> The government responded that the indictment
>
> complies with Rule 7(c), Fed. R. Crim. P., in that it contains a plain, concise, definitive statement of the essential facts and elements constituting the offense charged and from which the defendant is sufficiently able to prepare his defense.

*Id.* at 46. The government acknowledged that a bill of particulars should be ordered "when necessary to inform the defendant of the charges against him with sufficient clarity to enable him to prepare his defense [and] to minimize the element of surprise at trial." *Id.* The prosecution argued that the indictment "sets forth a complete description of the crimes with which the defendant is charged, as well as the dates on which the defendant committed these crimes." *Id.* at 47.[1]

At a hearing before the Magistrate Judge, defense counsel explained:

---

[1] The government noted in its response that defense counsel had been granted access to "documents and reports specifying the particular details of the crimes alleged in the superseding indictment." App. at 47. During trial counsel for the government acknowledged that Mr. Huggans' name never appeared in "all the tapes, all the summaries and DEA 6s," that had been made available to the defense. Tr. III at 88-89.

17

> We ask that, as the indictment reflects, the conspiracy with Mr. Stiles is the year 2000 to the year 2007 and simply says "with persons known and unknown" . . . The only material [provided by the government] that relates to Mr. Huggans . . . [is] what I believe to be a Curtis Rice and Mr. Anthony Stiles talk[ing] about history of Mr. Huggans within the [Luis Sais] conspiracy.

Tr. Mar. 11, 2008, at 23. Counsel told the Magistrate Judge that he "can't possibly determine what [Mr. Huggans] has done within this conspiracy . . . other than Stiles says during the course of these years . . . he bought this much dope." *Id.* at 24. When the court asked what additional information he might want, counsel answered:

> Some idea of when, where, some idea that we can respond [to] . . . [F]or example, if there was information [that] on or about August of 2006 there was a shipment . . . , it was ten kilograms and this happened on 20th and Olive, if Mr. Huggans is in Kansas City or he's in Florida, then obviously . . . we'd be able to respond to that, but I can't because I don't know when any of these acts would have occurred during this years period of time . . . And that's why we request . . . some form of bill of particulars as to Count I.

*Id.*

Counsel for the government responded: "I'm not prepared to give him specific dates, specific times and locations . . . because it's a time period." *Id.* at 25-26. He told the court: "I will debrief Mr. Stiles as closely as I can. Whatever particulars I pick up I will, of course, turn that over to the defendant as we go along." *Id.* at 26. When the Magistrate Judge asked counsel for the government when that might occur, he answered: "Well, as

18

we get closer to trial . . . but I don't know how specific it's going to be." *Id.*
The court then advised counsel for the government: "Okay. But . . . turning
that information over . . . three days before trial is a lot different than turning
it over . . . right now." *Id.* at 26-27. Counsel responded: "Sure." *Id.* at 27.

In her Report and Recommendation, the Magistrate Judge noted that
"the government intended to prove that Defendant was a member of the
Anthony Stiles conspiracy," consisting of Mr. Stiles, Curtis Rice, Luis Sais,
and others who had joined together to sell cocaine and marijuana. *Id.* at 70-
71. She observed that "the means and manner of [that] conspiracy were set
forth in detail" in the indictment under which the conspirators had been
prosecuted. *Id.* at 71. The Magistrate Judge recommended that Mr.
Huggans' motion for a bill of particulars be denied as moot. *Id.* at 90. The
District Court adopted that recommendation. *Id.* at 122-24.

At a hearing held before the District Court almost ten months later,
counsel for the government acknowledged having given defense counsel a
large volume of DEA reports and other documents five days earlier:

> I did that in an exercise of caution. Our agents compiled all of
> the [DEA] 6's that they have. I know that we turned over the
> vast majority of those 6's [promptly after the prior hearing] . . .
> and I know that I want to say 95 per cent of them I am sure they
> have . . . [I]t's a lot of pages, but . . . I think most of it is not
> new. There may be – I'm just not certain what was turned over.

Tr. Jan. 15, 2009, at 93-95. The District Court concluded:

Appellate Case: 10-3384    Page: 20    Date Filed: 02/24/2011 Entry ID: 3759317

> I don't believe that a lot has been turned over . . . Technically, under the law, some of this stuff really isn't even required to be turned over until during the trial, and so I don't believe the defendant has been prejudiced by it. If anything, they have been prejudiced by getting too many copies and that makes it hard to go through, and I realize that.

*Id.* at 99.

### 4. Motions for Severance

Mr. Huggans filed two motions for severance of the attempt and conspiracy charges. *Id.* at 56-58. The first motion was filed after the return of the superseding indictment, when defense counsel still believed on the basis of discovery materials that Mr. Huggans' purported co-conspirators were Ronald Gavin and Ricky Henderson. *Id.* at 56-57. The gravamen of that motion was that each count would be supported at best by marginal evidence of Mr. Huggans' guilt, that the various allegations were unrelated in time and in drug-trafficking personnel, and that the evidence of each count would cause jurors to be more likely to find had a propensity to commit the other and thus result in wrongful convictions. *Id.* at 56-58. The Magistrate Judge recommended that the motion be denied and the District Court adopted that recommendation. *Id.* at 90, 122-24.

Mr. Huggans later renewed his request for severance. *Id.* at 141-46. By that time the government had apprised defense counsel of its position that Mr. Huggans had been a co-conspirator of Mr. Stiles obtaining drugs

Appellate Case: 10-3384   Page: 21   Date Filed: 02/24/2011 Entry ID: 3759317

from the Sais drug trafficking organization. *Id.* at 142. Mr. Huggans advised the District Court that he would find it necessary to waive his right to trial by jury if the two counts were to be tried together. *Id.* at 142.

At the pre-trial hearing on January 15, 2009, the District Court asked the government's attorney:

> Aren't you concerned that what he's setting us up for—setting you up for, I'm just the Judge – but I might have to look at some of this stuff again on post motions, I was forced to waive my jury trial because the Judge wouldn't sever, because the Government opposed severance . . . ?

*Id.* at 106. The court accepted Mr. Huggans' waiver after counsel for the government denied any concern and announced his consent. *Id.* at 106-23.

The District Court subsequently granted Mr. Huggans a "sort of . . . last-chance-to-change-your-mind":

> I have ruled on your suppression motions, and I've ruled on your detention motions, so I know stuff about you that a jury won't know. I'm not going to consider that prior stuff when I decide the case. It's going to be based solely on the evidence presented at the trial, not on anything that was presented previously, but I'm a human being, I know that stuff, I have heard it before. I'm going to be very careful and listen to the evidence in your case, but you should understand that that is different. The jury won't have known any of the suppression issues, or heard any detention issues. They wouldn't know anything about why you're detained or anything else. Understanding all that stuff, do you still wish to waive your jury trial?

*Id.* at 125. Mr. Huggans, having previously told the court that nobody had forced him to waive his right to trial by jury but rather that he believed his "hands [to be] tied" and a jury waiver to be his "best choice" under the circumstances, said that he wanted to proceed with that election. *Id.* at 119, 125.

## B. Government's Evidence at Trial

### 1. Testimony of Anthony Stiles

Anthony Stiles testified for the government. Tr. II at 17. The prosecutor explained the government's current conspiracy theory to the District Court before he began to question Mr. Stiles about his purported dealings with Mr. Huggans:

> [O]ur theory of the conspiracy is his relationship begins in February and March of 2006, and continues until they stop . . . The 404(b) is that prior dealing where Stiles was actually getting stuff from Huggans as opposed to Huggans getting it from him in this conspiracy.

Tr. II at 22. Counsel for Mr. Huggans then noted that this information "gives some clarity . . . because once again the indictment alleges a conspiracy with persons known and unknown from 2001 to December of 2006." *Id.* Counsel for the government added that Mr. Huggans' "participation in [the Luis Sais] conspiracy begins with Stiles, but the conspiracy itself starts as you . . . will hear from Mr. Rice . . . in 2001, 2002,

Appellate Case: 10-3384    Page: 23    Date Filed: 02/24/2011 Entry ID: 3759317

so I didn't want to limit myself." *Id.* at 23. The District Court then restated

the government's position: "The conspiracy began then but [Mr. Huggans]

joined the conspiracy in 2006." *Id.* Defense counsel stated:

> That's the first time the defense has been given some clarity as
> to the Sais conspiracy starts in 2001 and that he's just joining it
> in 2006. If you noticed from the motions consistently about our
> problem with the indictment is that we just simply never had
> sufficient notice of who he was conspiring with in 2001 and
> 2002 and 2003.

*Id.* The District Court then concluded: "Well, I believe that there has been

sufficient notice, and I appreciate your clarifying these issues." *Id.*

Mr. Stiles testified that his history of felony drug convictions had

begun approximately 20 years prior to Mr. Huggans' trial. *Id.* at 20. He was

convicted of possessing cocaine in a state court during 1989. *Id.* Five years

later he was convicted of a state drug trafficking crime. *Id.* at 20-21. He

acknowledged having pled guilty to conspiracy in the government's

prosecution of the Sais drug trafficking organization. *Id.* at 18; Ex. 57. [2]

---

[2] Mr. Stiles and DEA case agent James Stroop testified that that Mr. Stiles
informed federal law enforcement officials of Mr Huggans' purported
involvement in the Sais conspiracy during a proffer on March 21, 2007. Tr.
II at 19-20. Mr. Stroop was the lead agent in the investigation and
prosecution of the Sais organization. Tr. III at 77-78. Mr. Stiles stated that
he had agreed to divulge everything he knew about everyone involved in the
conspiracy at that time, and that he had done so. Tr. II at 62. Mr. Stiles had
been one of 19 individuals charged in the original indictment of the Sais co-
conspirators on March 15, 2007. Tr. I at 27; Indictment, *United States v.
Stiles,* No. 4:07-cr-184 (E.D. Mo.). A superseding indictment was filed in

Mr. Stiles' plea agreement, which he signed and which was signed by the Assistant United States Attorney responsible for Mr. Huggans' case, represented to the District Court that Mr. Stiles' total offense conduct in the Sais drug trafficking conspiracy consisted of accountability for between 15 and 50 kilograms of cocaine. Tr. II at 89-90. Ex. 57, pp. 6, 15. The range of punishment for Mr. Stiles' offense had been 135 to 168 months. Tr. II at 19. The government asked the District Court for a reduced sentence pursuant to U.S.S.G. § 5K1.1 because of Mr. Stiles' cooperation in identifying and prosecuting members of the Sais conspiracy, and the court imposed a sentence of one-half the guideline minimum. Id.[3]

After he had been sentenced, Mr. Stiles sought a further sentence accommodation by assisting the government in prosecuting Mr. Huggans. *Id.* He met with Mr. Stroop and two other agents at a jail during March, 2007, and agreed to provide that assistance in exchange for the

---

that case on May 9, 2007, reasserting charges against 18 defendants. Superseding Indictment, *Stiles, supra.* Mr. Huggans was not charged or mentioned in either indictment. Mr. Huggans was indicted two months later. App. 22-23. He was not charged at that time with participation in the Sais conspiracy or any other conspiracy. *Id.* After Mr. Huggans filed a motion seeking dismissal of the 2007 attempt charged in that indictment on the basis of this Court's holding in *United States v. Joyce,* 693 F.2d 1068 (8th Cir. 1982), the government obtained a superseding indictment that added a conspiracy count against Mr. Huggans. *Id.* at 29-33, 42.

[3] It is apparent that the government did not file an information pursuant to 21 U.S.C. § 851 seeking an enhanced sentence on the basis of Mr. Stiles' prior conviction of a drug felony.

Appellate Case: 10-3384    Page: 25    Date Filed: 02/24/2011 Entry ID: 3759317

government's filing of a Rule 35 motion requesting another reduction of his sentence. *Id.* at 19-20, 48.[4] At Mr. Huggans' trial Mr. Stiles was asked when he decided to "show all [his] cards." *Id.* at 87-88. He answered: "I never showed all my cards . . . [Not] even today." *Id.*

Mr. Stiles testified that he had begun purchasing drugs for resale from Mr. Huggans during 2001. *Id.* at 25-26. After approximately one month Mr. Stiles "moved up" and started selling quarter-kilo quantities of cocaine. *Id.* at 26. Soon after that Mr. Stiles was trafficking in "kilogram quantities." *Id.* at 26-27.

Mr. Stiles said that he met a "connect" during 2005 and began purchasing Mr. Sais' cocaine. *Id.* at 28. He testified that his first purchases were 10-kilogram quantities and that he then graduated to larger transactions. *Id.* at 30. Mr. Stiles agreed that the deliveries had stopped by September, 2006. *Id.* at 32. He also acknowledged that there had been a period of one month during which he was unable to obtain drugs, and that after the "dry spell" he was able to purchase between 20 and 35 kilograms of cocaine "every five to eight days." *Id.* at 76-77.

---

[4] Mr. Stroop acknowledged in his trial testimony that Mr. Huggans never was heard in the government's extensive surveillance of the Sais drug trafficking organization and its St. Louis distributors. Tr. III at 78. He first heard Mr. Huggans' name during his debriefing of Mr. Stiles in March, 2007. *Id.* at 81, 87, 89-90.

Mr. Stiles acknowledged that he had sold cocaine obtained from the Sais organization "to whom he could" and that his customers had included Avery West, Kendrick Moore, Nikita Smith, Craig Small, and Ronald Clower. *Id.* at 35, 78. Mr. Stiles had identified each of the latter customers for law enforcement personnel when he was debriefed prior to making his initial plea deal. *Id.* at 35, 78. Mr. Stiles testified that he also had sold cocaine procured from the Sais organization sales in New York and New Jersey. *Id.* at 43. Mr. Stiles said that on one occasion a customer in New York to whom he had made prior deliveries "ran off with like 25 kilos of cocaine." *Id.* at 33.[5]

Mr. Stiles stated that he regularly sold Mr. Huggans quantities of either 20 or 35 kilograms of cocaine obtained from the Sais organization for between six and nine months. *Id.* at 34. He testified that Mr. Huggans purchased between 600 and 700 kilograms of cocaine at $17,500.00 per kilogram. *Id.* at 35, 101-03; Ex. 102. Mr. Stiles said that Mr. Huggans was his biggest customer but that nobody ever had witnessed his receipt of money from Mr. Huggans in connection with a drug transaction. *Id.* at 35,

_____

[5] Mr. Stiles' own price for the stolen cocaine had been $17,000.00 per kilogram, or $425,000.00. Tr. II at 34, 44. He testified that he owed that money to Mr. Sais and that he had begun to pay it back by giving Mr. Rice a watch and a diamond necklace, each worth $80,000.00, and a Cadillac automobile. *Id.* at 45.

Appellate Case: 10-3384     Page: 27     Date Filed: 02/24/2011 Entry ID: 3759317

92, 94.  Mr. Stiles made it apparent that Mr. Huggans' receipt of drugs from him also had not been seen by others:  "I brought it right to his doorstep." *Id.* at 86.  Mr. Stiles testified that he had no other source of drugs after the Sais organization stopped selling him drugs in 2006, and that he stopped his drug-dealing operation at that time.  Tr. II at 100.

## 2.  Testimony of Curtis Rice

At the time of his testimony, Curtis Rice was serving two five-year sentences in the Bureau of Prisons for interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952(a)(3).  *Id.* at 114.  Mr. Rice stated that an assistant United States Attorney and the arresting agents had met with him at his attorneys office and made an offer for his cooperation:  "They would try and give me the best sentence possible, which is what I got."  *Id.* at 115.  Mr. Rice immediately agreed to cooperate with the government.  *Id.* at 115-16.

Mr. Rice acknowledged a history of federal and state felony arrests and convictions.  *Id.* at 117-18.  He was convicted in a federal court during 1993 of "use of a communication facility" and sentenced to imprisonment for four years.  *Id.* at 117.  He had been arrested for a drug crime that required the imposition of a 10-year mandatory minimum sentence upon conviction.  Tr. III at 6.  Mr. Rice acknowledged that he "got on board in that case," cooperated with the government, and was allowed to plead guilty

Appellate Case: 10-3384     Page: 28     Date Filed: 02/24/2011 Entry ID: 3759317

to a "telephone" offense. *Id.* He was arrested four years later for a supervised release violation and subsequently sentenced to four more years of imprisonment for a second "telephone" offense. Tr. II at 117; Tr. III at 6.

Mr. Rice was convicted of distribution of cocaine during 2003. *Id.* Facing a mandatory minimum sentence of imprisonment for 20 years to life, he again cooperated with law enforcement authorities. Tr. III at 7. He was placed on probation. *Id.* Mr. Rice was arrested by state officers for distribution of a controlled substance during 2006. Tr. II at 117-18; Tr. III at 7-8. The following year, while that case was pending, the federal government charged him in its Sais drug conspiracy case. Tr. II at 117-18. As a result of his cooperation in the latter case, the state prosecution was abandoned and Mr. Rice was allowed to plead guilty to two counts of interstate traveling in aid of racketeering. *Id.* at 114. He was a federal inmate at the time of his testimony against Mr. Huggans. *Id.* at 113.

Mr. Rice agreed that he had "learned early on how to play the game of cooperation." Tr. III at 8. He acknowledged that the process involved "serv[ing] people up to the . . . Government [so] you will stay out of prison." *Id.* Asked whether he had learned to do that well, Mr. Rice responded: "I didn't always stay out of prison, but yeah." *Id.* at 8-9. When he was arrested in the Sais case during March, 2007, Mr. Rice realized that he was

28

"screwed" and that it was "time to cooperate." *Id.* at 9. The following

colloquy occurred during his cross-examination at Mr. Huggans' trial:

> Q.    And as you indicated before, it's not about being so much
> truthful, because obviously the Government says they want you
> to be truthful, but the Government needs bodies, they need
> people, correct?
>
> A.    Correct, yes.
>
> Q.    Because substantial assistance is what, what do you get
> for substantial assistance?
>
> A.    Time reduction.
>
> Q.    Time reduction, a 5K motion, and you know that you
> don't get . . . a 5K for being truthful, do you?
>
> A.    I mean, you can lie, yes.
>
> Q.    You get a 5K for giving them a person to prosecute?
>
> A.    Correct . . . .
>
> Q.    So, in your mind, you start thinking who are all the
> names that I can give the agents when they talk to me, right?
>
> A.    Just the people, yes.

*Id.* at 14-15. Mr. Rice received the opportunity to avoid yet another federal

drug conviction, with its substantial mandatory minimum prison sentence, in

exchange for his cooperation in the government's investigation and

prosecutions of the Sais conspiracy and Mr. Huggans. Tr. II at 114-15.

Appellate Case: 10-3384    Page: 30    Date Filed: 02/24/2011 Entry ID: 3759317

Mr. Rice testified that he had met Luis Sais when they both were confined at the Bureau of Prisons Medical Center in Forth Worth, Texas. *Id.* at 118-19. They began committing crimes together immediately after Mr. Rice was released from federal prison at the end of 2001 or the beginning of 2002. *Id.* at 119. At first their arrangement consisted of Mr. Rice delivering cars stolen in the United States to Mr. Sais in Mexico. *Id.* at 119. Mr. Sais provided Mr. Rice marijuana in exchange for the stolen cars, and Mr. Rice brought the marijuana back to the United States and sold it. *Id.*

Mr. Rice and his wife were operating a business through which they "transport[ed] vehicles all over the world." *Id.* at 119-20. Mr. Rice and his wife soon "graduate[d]" from trading Mr. Sais stolen cars for wholesale quantities of marijuana to transporting his cocaine. *Id.* at 120-21; Tr. III at 17.[6] Mr. Rice testified that for a time they transacted their drug business at a Mexican prison where Mr. Sais was confined:

> The prison he was at – it was like he was outside in the world. It was like an apartment complex, basically. There is about nine of them that had a barracks, a living unit, like a dorm. They had everything: marijuana, cocaine, women coming in and out freely . . . [H]e paid the guards . . . $15,000 a month just to . . . let them do as he pleased there.

---

[6] Mr. Stroop identified Mr. Rice as "a manager who oversaw the greater operations of St. Louis, Dallas, and elsewhere for the Luis Sais organization." Tr. I at 24-25.

Appellate Case: 10-3384    Page: 31    Date Filed: 02/24/2011 Entry ID: 3759317

Tr. II at 123.

> Mr. Rice described how Mr. Sais' cocaine reached the United States:
>
> The drugs would come from Mexico, cross over by boats, speed
> boat, and be picked up on the side of the river, and transported
> by a four-by-four truck, then it was disbursed through San
> Antonio, Ft. Worth, Austin, Texas, Dallas, Texas.

*Id.* at 122-23. Once cocaine reached the United States it was carried with

the Rices' 18-wheeled vehicle transporters. *Id.* He testified: "[W]e would

come pick it up in Texas . . . [T]hey load it up in Dallas and go to Oklahoma

overnight, and then from Oklahoma it would go to Chicago, or wherever it

was needed at that time." *Id.* at 124. Their operation extended eastward to

New Jersey and New York and occasionally westward to California or

Arizona. *Id.* at 124-25. When counsel for the government asked what

would happen to money collected in the cocaine trafficking operation, Mr.

Rice answered: "Every half million that we get, we take it back to Texas,

Dallas mostly." *Id.* at 125

Mr. Rice testified that the Sais organization established its first "St.

Louis connection" for drug sales during March, 2005. *Id.* at 126; Tr. III at

20-21. St. Louis became their "hub" for drug distribution to many other

cities. Tr. III at 23. The Sais organization's local sales in St. Louis initially

were to Sammy Jefferson and Eric Earnest. Tr. III at 21-22. Mr. Rice

testified that the organization did not identify Anthony Stiles as a potential

31

buyer until Mr. Jefferson was arrested in "the Spring of 2006." *Id.* at 24. He acknowledged that the conspiracy had "multiple people in St. Louis getting drugs" and that the buyers' operations were separate and distinct from one another. *Id.* at 34, 36.

Mr. Rice recalled that Mr. Stiles' initial purchase consisted of 10 kilograms of cocaine and occurred March or April, 2006. *Id.* at 26. Later he purchased between 20 and 40 kilograms per week. *Id.* at 35. Mr. Rice testified that Mr. Stiles was selling cocaine in Missouri and in New Jersey. *Id.* at 36. Mr. Rice said that the Sais organizations last delivery of cocaine to St. Louis occurred during July, 2006. *Id.* at 38. That business ended when Mr. Stiles lost $450,000.00 worth of cocaine in the course of a sale in New Jersey. *Id.* at 36, 39.

Counsel for the government questioned Mr. Rice about his acquaintance with Mr. Huggans. Tr. II at 140-41. Mr. Rice testified that he had met Mr. Huggans only once, "between March and April of 2006." *Id.* at 140. He was on his way to meet Mr. Stiles and encountered Mr. Stiles and Mr. Huggans standing on a sidewalk:

> We just pulled in and started talking . . . We didn't talk about any drugs or anything. I started talking to Mark. He made a comment about my Rolex that I had on, and then we were talking about cars, and then we were talking about his Camaro that he had that was souped up, took me for a ride in it that day, just went down the street and back.

32

*Id.* Mr. Rice testified that he had "an impression" that Mr. Huggans had purchased drugs from Mr. Stiles, but "never discussed that with him" at any time. *Id.* at 140, 145; Tr. III at 60.[7]

Mr. Rice recalled no further contact with Mr. Huggans until the events attending the reverse sting that culminated in Mr. Huggans' arrest on the attempt charge. Tr. II at 141-42. After Mr. Rice's arrest in 2007, Mr. Stroop and DEA agent William Keaney asked him to "pos[e] as a distributor" and "meet with Mark and see if he'll buy . . . cocaine off of me." *Id.* at 141. Mr. Rice acknowledged that the first time he ever heard Mr. Huggans' name was when Mr. Stroop and Mr. Keaney gave it to him. Tr. III at 47-48.

Mr. Rice and Mr. Stiles met with Mr. Huggans at a nightclub on April 9, 2007. Tr. II at 142. Drugs were not discussed that evening. *Id.* Mr. Rice testified that he called Mr. Huggans the following day and proposed that they meet at a hotel parking lot that had been designated for him by the DEA agents. *Id.* at 49-50.

At that meeting Mr. Rice and Mr. Huggans discussed the fact that Mr. Stiles was "in the hole" and "needed help." *Id.* at 50-51. Mr. Rice acknowledged having told the agents that Mr. Sais "was a person of great

---

[7] Mr. Stiles testified that Mr. Rice and Mr. Huggans never met before he introduced them to one another during April, 2007. Tr. II at 98.

Appellate Case: 10-3384    Page: 34    Date Filed: 02/24/2011 Entry ID: 3759317

power in the underworld of narcotics distribution" and that people who owe "the organization" money could become the victims of violent crime. *Id.* at 51. Mr. Huggans told Mr. Rice "a couple of times" that "'I need to help this guy out.'" *Id.* at 53. Mr. Rice testified that he made it clear to Mr. Huggans that the Sais organization was not going to sell any more drugs to Mr. Stiles. *Id.* at 52. He and Mr. Huggans agreed to a deal in which he would sell Mr. Huggans 20 kilograms of cocaine. Tr. II at 142.

Mr. Rice and Mr. Huggans met two days later on a parking lot in St. Louis County and then drove to a hotel. *Id.* at 147. Mr. Huggans carried two backpacks into the hotel with Mr. Rice. Tr. III at 4. Mr. Rice acknowledged at trial that he "ke[pt] on telling" Mr. Huggans: "'We're only going to meet, and we're only going to count money.'" *Id.* at 53. He assured Mr. Huggans that no drugs would be present. *Id.* at 53-54.[8] Mr. Rice and Mr. Huggans entered a hotel room that was under video surveillance. Tr. II at 147; Ex. 47, 47A, 48. Inside the room Mr. Rice used a currency counting machine to count cash from the backpacks. Ex. 47, 47A, 48.

---

[8] Mr. Stroop, the lead DEA agent, testified that he and his team never intended to have real or fake drugs involved in the sting operation. Tr. III at 103-04.

Mr. Rice acknowledged that Mr. Huggans had stated repeatedly that they would have no deal until he had seen the drugs: "He wanted to see the [drugs], he wanted to know what they looked like." Tr. II at 146-47; Tr. III at 53-55. Mr. Rice agreed that the DEA agents' plan "was to get [Mr. Huggans] to a hotel room, count some money, and we'll take him down." *Id.* at 55-56. He said he knew Mr. Huggans was to be arrested "when he walked out of the room." *Id.*

No drugs or pseudo drugs ever were brought to the hotel room. Ex. 47, 47A, 48. After the money counting was completed and the cash had been placed in a large bag, Mr. Rice picked up the bag and carried it out of the hotel room. Tr. III at 5. He acknowledged having known that Mr. Huggans did not relinquish the money to him:

> Q. Did you ever get any impression from Huggans that you could walk out of his sight with the money?
>
> A. No, I didn't give him that impression.
>
> Q. Because you knew based on your impression and experience it wasn't ever going to happen, was it?
>
> A. I knew it was not going to happen, yeah.

*Id.* at 63. The agents arrested Mr. Huggans as he left the room. Tr. I at 39; Tr. III at 58.

35

### 3. Motion for Judgment of Acquittal

Defense counsel moved for a judgment of acquittal at the close of the government's evidence. Tr. IV at 89. The District Court denied the motion. *Id.* At the conclusion of trial the court directed counsel for the government and for Mr. Huggans to make closing arguments. *Id.* at 136. During the course of his summation defense counsel asked the court to find that the government had failed to adduce evidence sufficient to support a finding of guilt on either count. *Id.* at 149-56. The District Court eventually found Mr. Huggans guilty of both charges. Tr. Mar. 13, 2009, at 16-17.

### C. Post-Trial Proceedings

#### 1. Government's Information Seeking Enhanced Sentence and Defendant's Response to Information

The government filed an information pursuant to 21 U.S.C. § 851(a)(1). App. at 147-48. The information charged that Mr. Huggans had been convicted of drug felonies twice in Missouri courts and requested that his sentence in the event of conviction be enhanced to a term of imprisonment for life. *Id.* at 147. The convictions alleged in the information had occurred during 1990 and 1995. *Id.* at 147-48.

Mr. Huggans denied that either of the Missouri convictions alleged by the government was a valid basis for the enhancement of his sentence. With respect to his earliest conviction, he contended that he had sought federal

Appellate Case: 10-3384     Page: 37     Date Filed: 02/24/2011 Entry ID: 3759317

habeas corpus relief on the basis of his trial counsel's actual conflict of interest in the case, and that his petition had been denied on the basis of a procedural criticism that subsequently was discredited by the Supreme Court and this Court. App. at 215-20. With respect to his second conviction, Mr. Huggans provided the District Court with the affidavit and office notes of his defense attorney reflecting his timely complaint that St. Louis police officer Robert Garrett had planted the drugs at issue in his jacket pocket. *Id.* at 220-24. Mr. Huggans apprised the court that Mr. Garrett recently had pled guilty to federal crimes based on precisely such conduct over the course of time and that federal and state prosecutors had announced a systematic review of all cases in which he had made drug arrests. *Id.*

Mr. Huggans requested the opportunity to challenge both of those convictions prior to the imposition of sentence in this case. App. at 214-15; Sent. Tr. 13-15. He challenged the constitutionality of the five-year look-back limitation of 21 U.S.C. § 851(e), contending that absent equitable tolling the limitation period would violate his Fifth Amendment right to due process. App. at 214-15; Sent. Tr. 13-15.

The District Court ruled: "I don't think there is a basis for equitably tolling this matter . . . [B]ecause these prior convictions occurred more than five years before the date of the information alleging the prior convictions,

37

the defendant may not challenge their validity." Sent. Tr. at 18. The court found that Mr. Huggans had been twice convicted of drug felonies and imposed the enhanced sentence of imprisonment for life that the government had requested in its § 851 information. *Id.* at 70.

## 2. Motion for a New Trial

Mr. Huggans filed a motion for a new trial on the basis of newly discovered evidence. *Id.* at 270-79. The motion was filed after the District Court had announced its verdict and prior to the imposition of sentence. *Id.* Mr. Huggans said he had obtained copies of the sealed presentence reports and plea agreements of Mr. Jefferson and Mr. Earnest, who were identified at trial as his alleged co-conspirators. *Id.* at 273-74. He noted that prior to trial defense counsel had "continuously sought more specific information regarding the scope and personnel" of the conspiracy charged against him. *Id.* at 274-75.[9] His motion alleged that the information was exculpatory with regard to his purported involvement in the conspiracy and that the government had committed a *Brady* violation by failing to apprise him of the

---

[9] At a hearing 11 days prior to trial, counsel for the government informed the District Court that defense counsel had requested the presentence reports of the government's witnesses: "I said I'm not at liberty to turn those over . . . If a judge tells me to do that, that's okay." Tr. Jan. 15, 2009, at 96-97. The court did not address the matter. *Id.* at 97.

Appellate Case: 10-3384   Page: 39   Date Filed: 02/24/2011 Entry ID: 3759317

limited drug trafficking it had ascribed to his purported co-conspirators. *Id.* at 274-75.

The District Court denied Mr. Huggans' motion without having held a hearing. *Id.* at 285-286. The court explained:

> This was a bench tried case and I am very familiar with the evidence that was produced. The evidence against defendant was overwhelming, and even if this additional evidence had been introduced at trial, it would not have changed the outcome.

*Id.* at 285. The court also found that the evidence was known to the defense at the time of trial. *Id.*

Appellate Case: 10-3384    Page: 40    Date Filed: 02/24/2011 Entry ID: 3759317

## SUMMARY OF ARGUMENT

1.  The District Court erred in denying Mr. Huggans' motions to dismiss the indictment.  The indictment alleged a drug conspiracy covering a span of seven years but specified not one act nor one co-conspirator nor one location nor one specific date associated with the charge.  It alleged an attempt and a "substantial step" but offered no hint of what that step might have been.  The indictment thus failed to afford Mr. Huggans notice of the particular charges he would have to meet or the ability to plead a former acquittal or conviction in the event of future prosecution.

2.  The court erred in denying Mr. Huggans' requests for a bill of particulars.  Because the indictment was so vague, a bill of particulars was the defendant's only hope of a decent chance to prepare for trial.  The District Court's ruling enabled the government to alter its conspiracy theory as the case moved toward trial and kept defense counsel from having certainty about the substantial step that the government might intend to prove in its attempt case.

3.  By denying Mr. Huggans' motions for severance of the government's two marginal and distinct charges, the District Court caused Mr. Huggans to waive his right to trial by jury.  The conspiracy charge depended on the fact-finder's willingness to believe the testimony of a

Appellate Case: 10-3384    Page: 41    Date Filed: 02/24/2011 Entry ID: 3759317

criminal who admitted his own lack of candor even in trial testimony and who was a serial informant providing johnny-come-lately cooperation for the government with the expectation of obtaining yet another reduction of his own punishment. A juror's reluctance to be persuaded by such a witness inevitably would be assuaged by evidence in the attempt case that Mr. Huggans had negotiated a drug purchase and brought $340,000.00 in cash to be counted in preparation for that transaction. A juror who otherwise might have difficulty deciding how committed Mr. Huggans was to the latter transaction when he brought his money to be counted might well find his concern dissipating when he heard Mr. Stiles recount his supposed sale of hundreds of kilograms of cocaine to Mr. Huggans during a recent six-month period.

4. The evidence by which the government sought to prove its conspiracy charge could establish nothing more than a buyer-seller arrangement in which Mr. Huggans purportedly bought wholesale quantities of cocaine on several occasions over a relatively brief period of time. Because conviction of conspiracy to traffic in drugs requires proof of more than drug transactions, the evidence was insufficient to support a guilty verdict in this case.

Appellate Case: 10-3384   Page: 42   Date Filed: 02/24/2011 Entry ID: 3759317

5.  The evidence of attempt proved that Mr. Huggans had participated in the negotiation of a 20-kilogram cocaine transaction and had brought the specified purchase money to a hotel room to be counted in preparation for that deal.  The defendant in *United States v. Joyce,* 693 F.2d 838 (8th Cir. 1982), did the same, traveling from Oklahoma to Missouri in the process, and went so far as to handle and examine the product that he was to purchase.  This Court concluded that his conduct did not constitute a substantial step toward acquisition of the drugs and amounted only to planning and preparation.  Mr. Huggans did not progress any further into the present transaction.

6.  The District Court erred in imposing an enhanced sentence based on two prior felony drug convictions without affording Mr. Huggans the opportunity to challenge the validity of those convictions.  Contrary to the court's ruling, the five-year look-back limitation of 21 U.S.C. § 851(e) is subject to equitable tolling and should have been tolled with respect to Mr. Huggans' 1990 and 1995 convictions.  If the limitation statute is not subject to equitable tolling, it deprives a defendant who asserts a colorable challenge to an aged conviction due process of law by arbitrarily depriving him of liberty.

Appellate Case: 10-3384     Page: 43     Date Filed: 02/24/2011 Entry ID: 3759317

7.  The District Court erred in denying Mr. Huggans' motion for a new trial based on newly discovered evidence.  The evidence, consisting of the presentence reports and affidavits of admitted participants in the conspiracy alleged against Mr. Huggans, undermined the government's theory and evidence of Mr. Huggans' own involvement.  Particularly in view of the thinness of the prosecution's evidence, the new evidence would have been likely to produce a different result at trial.

8.  The District Court abused its discretion in failing to review presentence reports of the government's several cooperating witnesses. Defense counsel had requested that the government produce the reports. Counsel for the government advised the court of the government's belief that it could not comply with that request unless directed to do so by the court. This Court's opinion in c *United States v. Garcia,* 562 F.3d 947, 952 (8th Cir. 2009), makes it clear that the District Court should have examined the reports for undisclosed *Brady/Giglio* information, and the case should be remanded for that examination now.

Appellate Case: 10-3384     Page: 44     Date Filed: 02/24/2011 Entry ID: 3759317

# ARGUMENT

## I.

**The District Court erred in denying Mr. Huggans' motions to dismiss the indictment.**

*Standard of review:* The sufficiency of an indictment is a matter of law and is reviewed *de novo. United States v. Hance,* 501 F.3d 900, 906 (8th Cir. 2007).

The Fifth Amendment prohibits prosecutions for crimes that have not been charged by a grand jury. U. S. Const. amend. V. The Supreme Court has identified two principal criteria for judging the constitutional sufficiency of an indictment: (1) "whether [it] contains the elements of the offense intended to be charged" so that the defendant is apprised of the particular charge he must meet; and (2) whether its clarity and detail are sufficient for him to be able to plead a former acquittal or conviction "in case any other proceedings are taken against him for a similar offense." *Russell v. United States,* 369 U.S. 749, 763-64 (1962); *see also United States v. Wessels,* 12 F.3d 746, 750 (8th Cir. 1993) (stating that an indictment is sufficient only if it gives the defendant fair notice of the charges against which he must defend and enough factual information to establish prior conviction or acquittal as a bar to subsequent prosecution). Both charges in the present indictment fail both prongs of that test.

44

An indictment does not provide adequate notice to the defendant unless the general statement of the crime charged "is accompanied by the specific facts constituting the offense." *United States v. Helmel,* 769 F.3d 1306, 1322 (8th Cir. 1985) (quoting *Hamling v. United States,* 418 U.S. 87, 117-18 (1974)). The superseding indictment in this case is a pristine example of a charging instrument bereft of specific facts sufficient for meaningful description of a crime. With respect to the conspiracy, the indictment alleged that the defendant had conspired with an uspecified number of other individuals (some of whom were known to the government but *none* of whom were named) to possess and distribute cocaine at unspecified times and locations between 2000 and 2007. App. at 29-30.[10] With respect to the specific facts of the "substantial step" element of attempt, the indictment said exactly nothing. *Id.* at 30.

"[R]eal notice of the true nature of the charge against him [is] the first and most universally recognized requirement of due process." *Smith v.*

---

[10] When the Assistant United States Attorney told the District Court during trial that the government's "theory of the conspiracy" was that Mr. Huggans relationship "begins in February and March of 2006, and continues until they stop [later that year]," defense counsel responded: "That's the first time the defense has been given some clarity as to the Sais conspiracy starts in 2001 and that [Mr. Huggans is] just joining it in 2006." Tr. II at 22-23. Counsel noted that the defendant's motions consistently identified the impossibility of knowing with whom was purported to have been conspiring during the seven-year span charged in the indictment. *Id.* at 23.

Appellate Case: 10-3384    Page: 46    Date Filed: 02/24/2011 Entry ID: 3759317

*O'Grady,* 312 U.S. 329, 334 (1941). The notion that the indictment in this case provided Mr. Huggans and defense counsel with "real notice" of the charges against him—that the government and the District Court saw to it that the defendant and his attorney had a fair opportunity to prepare a defense to meet the indictment's incredibly vague allegation of conspiracy between 2000 and 2007 and its fact-free allegation that he took a "substantial step" toward a separate wholesale drug at some point during a 42-day period in 2007—is untenable.

It is just as unreasonable to suggest that the indictment—which charged Mr. Huggans with having conspired with an unspecified number of unnamed persons at unlimited locations at untold times during a seven-year period to possess and distribute cocaine, and with having taken a undescribed "substantial step" toward a second drug trafficking crime at some point during a period that may have extended some 43 days during 2007, App. at 29-33—would enable him to plead his prior conviction if charged again. That is true particularly in view of the utter lack of clarity about exactly who sold how much to whom in the Sais conspiracy, evidenced by the plea agreements and presentence reports from that prosecution, in juxtaposition with the testimony about drug trafficking personnel and quantities adduced from Sais co-conspirators and testimony

Appellate Case: 10-3384    Page: 47    Date Filed: 02/24/2011 Entry ID: 3759317

about Mr. Huggans' purported drug trafficking with Mr. Stiles during all of the years alleged in the indictment.

With respect to the attempt charge, the factual deficiency of the indictment amounted to the omission of an element of the charged offense. In *United States v. Resendiz-Ponce,* 549 U.S. 192 (2007), the Supreme Court reiterated the proposition that the commission of a substantial step toward commission of the completed offense is an element of criminal attempt and must be charged in the indictment. *Id.* at 106-07 (citing *Braxton v. United States,* 500 U.S. 344, 349 (1991)). Because such an omission "affects the framework within which the trial proceeds," in this case by affording the government liberty to evolve the facts by which it would seek Mr. Huggans' conviction and imprisonment for life, the constitutional violation is structural and not subject to harmless error review. *See Neder v. United States,* 527 U.S. 1, 8-10 (1999).

Mr. Huggans is aware of this Court's position that the omission of an element from the grand jury charge is not structural and may be subjected to harmless error analysis. *See United States v. Allen,* 406 F.3d 940, 945-46 (8th Cir. 2005). The federal circuits are divided on that issue. *See, e.g., United States v. Prentiss,* 206 F.3d 960, 977 (10th Cir. 2000) (holding that omission of an element from the indictment is structural error and not

47

subject to harmless error review); *United States v. Du Bo,* 186 F.3d 1177,

1180 (9th Cir. 1999) (same); *United States v. Spinner,* 180 F.3d 514, 515-16

(3rd Cir. 1999) (same). It is Mr. Huggans' position that the omission of an

element from an indictment is structural error requiring reversal without

further analysis.

Even under a harmless error standard, however, the failure of the

present indictment to allege facts that could amount to a "substantial step"

would require reversal. "The test for harmless error is straightforward.

'Any error that does not affect substantial rights must be disregarded.'"

*Allen,* 406 F.3d at 945 (quoting Fed.R.Crim.P. 52(a)). Before a

constitutional error can be held harmless, however, the reviewing court must

find that it was so beyond a reasonable doubt. *Chapman v. California,* 386

U.S. 18, 24 (1967). Because it is impossible to declare with certainty that a

properly informed grand jury would have found that Mr. Huggans had

progressed far enough into the drug transaction to have satisfied the

substantial step requirement, the belief that is a precondition of finding the

error harmless cannot be had.

Mr. Huggans' opportunity for preparation to meet the government's

evidence was compromised by the overbreadth of the indictment and the

consequent impossibility of knowing at what times he must be able to

Appellate Case: 10-3384     Page: 49     Date Filed: 02/24/2011 Entry ID: 3759317

account for himself, in what years and what places he might need to prove his activities and relationships, and in what particular conspiracy with which particular co-conspirators the government might seek to place him both in their principal case and in evidence to be tendered pursuant to Fed. R. Evid. 404(b). The present record cannot assure him that a plea of prior conviction would suffice to bar his re-prosecution for involvement in some aspect of the Sais conspiracy. The judgment of conviction should be reversed for those reasons.

Appellate Case: 10-3384    Page: 50    Date Filed: 02/24/2011 Entry ID: 3759317

## II.

**The District Court erred in denying Mr. Huggans' motions for a bill of particulars.**

> *Standard of review:* The denial of a bill of particulars is reviewed for abuse of discretion. *Wong Tai v. United States,* 273 U.S. 77, 82 (1927). A trial court abuses its discretion in that regard when an indictment fails to provide sufficient facts to avoid surprise to the defendant or to bar future prosecutions. *United States v. Key,* 717 F.2d 1206, 1210 (8th Cir. 1983).

Defense counsel required clarification of the government's jumbled conspiracy theory and at least a modicum of dependable information about the parameters of its attempt case. "The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him, and to prevent or minimize the element of surprise at trial." *United States v. Hance,* 501 F.3d 900, 906 (8th Cir. 2007). When the information sought through a bill of particulars has been provided to the defendant in his indictment, the bill may be denied. *United States v. Matlock,* 675 F.2d 981, 986 (8th Cir. 1982). But when the indictment fails to tell the accused enough about his purported crime to afford him a decent opportunity to prepare a defense to the government's case, the denial of a bill of particulars will facilitate a government ambush at trial. That happened in this case.

Appellate Case: 10-3384    Page: 51    Date Filed: 02/24/2011 Entry ID: 3759317

## A. Conspiracy Charge

The need for particularization in this case was patent and profound. The government's theory of the conspiracy count took shape long after the superseding indictment was filed. See Tr. Mar. 8, 2008, at 5-10; Tr. II at 22-23. Its theory of the attempt count may have been fully formed from the beginning, but the indictment was singularly inadequate to provide Mr. Huggans and his trial counsel dependable notice of the parameters of that case.

The elements of a drug conspiracy are (1) an agreement between two or more individuals to distribute (or possess with the intent to distribute) a controlled substance, (2) voluntary and intentional entry into the agreement, and (3) knowledge of the essential purpose of the agreement. *United States v. Harris,* 493 F.3d 928, 931 (8th Cir. 2007). The distinction between continuing relationships with multiple drug traffickers and users and single, isolated sales agreements can defeat a drug conspiracy prosecution. Id.; *see also United States v. Wiggins,* 104 F3d 174, 177 (8th Cir. 1997). It was impossible to determine from the indictment who the members of the particular conspiracy being prosecuted in this case might be, with which co-conspirators Mr. Huggans was supposed to have acted in furtherance of the conspiracy, when or where the charged conduct occurred, or what the scope

51

and activities of the purported conspiracy may have been. With none of that information, Mr. Huggans and his attorney were left to guess at methods of investigation and trial preparation, and to react in the moment of trial to prosecution evidence that they should have had a fair opportunity to evaluate and prepare to meet before trial commenced—or, for that matter, before the decision to proceed to trial had to be made.

## B. Attempt Charge

An essential element of the attempt alleged in this case is the completion of a "substantial step" toward the choate crime. *United States v. Joyce,* 693 F.2d 838, 841 (8th Cir. 1982). The conduct that is supposed to comprise that substantial step is necessarily describable: it is an action or omission that "in the ordinary and likely course of things [would] result in the commission" of the crime that the defendant purportedly has attempted. *Id.* (quoting *United States v. Monholland,* 607 F.2d 1311, 1318 (8th Cir. 1979)). The indictment did not provide that information in this case. Because the grand jury chose to charge an attempt occurring between "March and April 12, 2007, rather than the very few particular days over which the government eventually sought to prove that Mr. Huggans had acted criminally, a bill of particulars was the defendant's last hope for reliable anticipation of the government's proof.

52

Identifying the dividing line between mere preparation and planning and a punishable attempt is a difficult job even for appellate courts. *United States v. Ivic,* 700 F.2d 51, 66 (2nd Cir. 1983). The government's decision to proceed on an indictment lacking in factual information and its opposition to Mr. Huggans' motions for a bill of particulars—its active aversion to commitment regarding the essential facts upon which it would seek to imprison Mr. Huggans for life—gave the defense good cause to refrain from depending on the events of April 9-12, 2007, as the scope of the case the government would seek to prove.

Mr. Huggans' liberty for the remainder of his life was at stake in this prosecution. Defense counsel had his hands full preparing to meet the government's evolving conspiracy charge. The District Court abused its discretion when it facilitated the government's hide-the-ball tactic.

Defense counsel professed his surprise regarding the facts of Mr. Huggans' purported participation in particular drug conspiracies from the time of his first motion to dismiss the conspiracy charge through the time of trial.[11] Counsel continuously sought clarification of both charges. Absent a bill of particulars, counsel was left to guess at methods of investigation and

---

[11] The first motion, premised on the only information provided by the government at the time of drafting, was based on the mistaken premise that Mr. Huggans' co-conspirators in the charged case were Ronald Gavin and Ricky Henderson. App. at 50-51; Tr. Mar. 11, 2008, at 9-11.

Appellate Case: 10-3384   Page: 54   Date Filed: 02/24/2011 Entry ID: 3759317

trial preparation, and to react in the moment of trial to prosecution evidence that he should have had a fair opportunity to evaluate before trial commenced.

One function of a bill of particulars is to "enable [the defendant] to prepare for trial." *United States v. Hernandez,* 299 F3d 984, 989-90 (8th Cir. 2002). Another function is to "enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite." *Id.* at 990. A district court necessarily has abused its discretion when the denial of a bill of particulars thwarts those two objectives. That happened in this case. The judgment of conviction must be reversed for that reason.

Appellate Case: 10-3384   Page: 55   Date Filed: 02/24/2011 Entry ID: 3759317

## III.

### The District Court erred in denying Mr. Huggans' motion for severance and separate trials of the conspiracy and attempt charges.

*Standard of review:* The denial of a motion for severance is reviewed for abuse of discretion. *United States v. Pherigo,* 327 F.3d 690, 693 (8th Cir. 2003). Reversal is required when there is a showing that the denial resulted in clear prejudice. *Id.*

Fed.R.Crim.P. 14(a) authorizes a district court to "order separate trials of counts . . . or provide any other relief that justice requires" whenever "the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant."

In this case the government combined two charges that were lame and losable by themselves but likely to bolster one another if tried together before a jury. Jurors who were inclined to doubt the credibility of the government's conspiracy witness—Mr. Stiles, a serial informer-for-leniency with all the reason in the world to lie, a history that was the antithesis of dependable character, and no evidence or other witnesses to corroborate his testimony about drug sales to the present defendant—inevitably would be encouraged to resolve that doubt in favor of the government when they learned that Mr. Huggans brought to knapsacks filled with $340,000.00 in cash to be counted in preparation for a later, post-conspiracy drug purchase. The focus of jurors disposed to follow faithfully an instruction regarding the

55

distinction between planning and preparation for the commission of a crime and the taking of a substantial step toward completion of the offense necessarily would be altered by the presentation of conspiracy evidence calculated to eliminate any doubt about Mr. Huggans' business and his history in that trade.

A district court enjoys broad discretion with respect to the severance of counts within an indictment. *United States v. Bohr,* 581 F.2d 1294, 1300-01 (8th Cir. 1978). But a request for separate trials must be granted when it is clear that the defendant will suffer prejudice from a trial in which the counts are joined. *United States v. Martinez,* 573 F.2d 529, 533 (8th Cir. 1978). This was not a case in which the defendant was simply claiming that he would have "a better chance of acquittal" if severance was granted. *Cf. United States v. Smith,* 578 F.2d 1227 (8th Cir. 1978). The district court's denial of Mr. Huggans' request for severance gave the government an unjustifiable opportunity to parlay disparate accusations to obtain one or more convictions where none might otherwise have occurred.

This Court has recognized the vice of allowing "mini-trials over the events underlying . . . relatively remote drug transactions" when the government's purpose in precipitating such issues is to bolster its evidence of a separate and distinct crime. *United States v. Cook,* 454 F.3d 938, 942

56

(8th Cir. 2006). *Cook* took note of the substantial risk that jurors will be confused and distracted from the "central task" of determining what happened in the central case. *Id.* (citing *United States v. Perkins,* 937 F.2d 1397, 1401 (9th Cir. 1991)).

When the trial court refused to grant Mr. Huggans' request for separate trials, the consequence was an election to waive trial by jury. App. at 141-43; Tr. Jan. 15, 2009, at 103-25. Defense counsel told the District Court that he had "quizzed" numerous experienced lawyers and most had agreed that jurors could not be counted on to distinguish between the two charges: "[A]nd therefore we believe that the only way that the fact finder can make a fair determination [in a single trial] is to do it with the court . . . [T]his is one of those rare times that I can't trust a jury to figure it out." *Id.* at 104.

Mr. Huggans concurred in that judgment in a colloquy with the court. *Id.* at 119-25. He said he felt his hands were tied and that waving a jury was his best choice under the circumstances—despite the District Court's candid caveat:

> I know stuff about you that a jury won't know . . . I'm a human
> being, I know that stuff, I have heard it before. I'm going to be
> very careful and listen to the evidence in your case, but you
> should understand that this is different. The jury won't have
> known any of the suppression issues, or heard any detention

57

issues.  They wouldn't know anything about why you're detained or anything else.

*Id.* at 125.

The Sixth Amendment right to trial by jury is "fundamental to the American scheme of justice."  *Duncan v. Louisiana,* 391 U.S. 145, 149 (1968).  The trial court's refusal to allow separate trials impelled Mr. Huggans to waive that right.  The exertion of that pressure upon the decision to exercise or waive a bedrock constitutional entitlement was improper and prejudicial.  The court was called upon to weigh the inconvenience of separate trials against the prejudice of allowing the government to use two marginal cases to bolster one another into a better chance for conviction. *See United States v. Brim,* 630 F.2d 1307, 1310 (8th Cir. 1980).  It made the wrong choice.

The convictions that ensued should be reversed by this Court.

Appellate Case: 10-3384    Page: 59    Date Filed: 02/24/2011 Entry ID: 3759317

# IV.

### The evidence was insufficient to prove Mr. Huggans guilty of the conspiracy charge.

> *Standard of review:* "The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

A drug distribution conspiracy within the contemplation of 21 U.S.C. § 846 requires proof that the defendant knowingly agreed with someone else—either explicitly or implicitly—to distribute drugs. *United States v. Nunn,* 940 F.2d 1128, 1132 (8th Cir. 1991). The government's evidence of Mr. Huggans' membership in the Sais conspiracy, sometimes called by the prosecution the Stiles conspiracy, consisted of Mr. Stiles' testimony that he had sold wholesale quantities of cocaine to Mr. Huggans on a regular basis for several months during 2006. Tr. II at 28-35, 101-03. Because the government's evidence was capable of establishing nothing more than the purported buyer-seller relationship between Mr. Stiles and Mr. Huggans, it was insufficient to prove the conspiracy charged in Count I of the indictment.

Appellate Case: 10-3384    Page: 60    Date Filed: 02/24/2011 Entry ID: 3759317

When alleged co-conspirators are in a buyer-seller relationship, it is imperative to retain the distinction between their buy-sell agreement and the purported drug-distribution agreement that forms the basis of the charged conspiracy. *United States v. Johnson,* 592 F.3d 749, 754 (7th Cir. 2010); *see also United States v. Prieskorn,* 658 F.2d 631, 634-35 (8th Cir. 1981) (recognizing that "the mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction"); *United States v. Hawkins,* 547 F.3d 66, 74 (2nd Cir. 2008) (stating that "[e]vidence that a buyer intends to resell the product instead of personally consuming it does not necessarily establish that the buyer has joined the seller's distribution conspiracy").

The government's theory of a conspiracy involving Mr. Huggans consisted of two parts. First, as the Assistant United States Attorney explained in summation, there was the Sais drug trafficking organization:

> [T]here [were] several witnesses who were admitted
> conspirators, who detailed their involvement with the Sais
> organization operating from Mexico, through Dallas, and into
> St. Louis. There was testimony from each of them as to their
> participation and the participation of others involved.

Tr. IV at 136-37. That part of the government's conspiracy evidence was clear enough, but it had a material limitation: not one of those witnesses said a word about Mr. Huggans.

60

The second part of the government's conspiracy case was its attempt to find a place in the organization for Mr. Huggans. Counsel described the beginning of the purported drug-dealing relationship between Mr. Stiles and Mr. Huggans in his summation: "Mr. Stiles testified that he became involved early with the defendant in what we called 404(b) evidence, and that was prior to 2000, or during 2005, and through 2002." Tr. IV at 137. That was typical of the muddiness that beset the prosecution's conspiracy theory throughout the pendency of the case.

The government contended that Mr. Huggans actually became a part of the Sais conspiracy early in 2006. Tr. IV at 137. Counsel allowed that that "[t]he defendant's involvement in this . . . conspiracy was detailed primarily by Mr. Stiles." *Id.*[12] All that Mr. Stiles described, however, was an arrangement in which Mr. Huggans supposedly bought wholesale quantities of cocaine from him over a relatively brief period of time. Tr. II at 28-35, 101-03. That evidence was not sufficient to prove a conspiracy.

---

[12] This was an understatement in that no other witness purported to have known that Mr. Huggans was so much as purchasing drugs from Mr. Stiles—let alone that he had become a member of the conspiracy, Mr. Stiles acknowledged that there never had been a witness to his supposed delivery of drugs to or receipt of purchase money from Mr. Huggans, Tr. II at 35, 86, and the lead DEA agent in the government's investigation of the Sais conspiracy never heard Mr. Huggans on a surveillance tape during that investigation or heard his name at all until *after* Mr. Stiles had completed the supposedly complete cooperation that earned him his first sentence reduction. Tr. II at 19; Tr. III at 77-78.

Appellate Case: 10-3384     Page: 62     Date Filed: 02/24/2011 Entry ID: 3759317

In *United States v. Lechuga,* 994 F.2d 346 (7th Cir. 1993), the

Seventh Circuit Court of Appeals sitting en banc held that evidence of a

defendant's participation in transactions involving large quantities of

controlled substances, without more, cannot sustain a conspiracy conviction.

*Id.* at 347.  That court concluded:  "What is necessary and sufficient is proof

of an agreement to commit a crime other than the crime that consists of the

sale itself."  *Id.*  More recently Judge Posner explained for a Seventh Circuit

panel:

> There are practical reasons for not conflating sale with
> conspiracy.  "A sale, by definition, requires two parties; their
> combination for that limited purpose does not increase the
> likelihood that the sale will take place, so conspiracy liability
> would be inappropriate . . . A conspiracy involves more people
> and can therefore commit more crimes; and it can do so more
> efficiently, by exploiting the division of labor and by arranging
> concealment more effectively—sometimes through suborning
> law enforcers."

*United States v. Colon,* 549 F.3d 565, 569 (7th Cir. 2008).  *Colon*

concluded:  "[I]n our case there is no evidence of a relationship other than a

conventional sales relationship between the defendant and the conspiracy

from which he bought drugs."  *Id.* at 570; *see also United States v. Delgado,*

No. 07-41041, 2011 WL 248886 at *7 (5th Cir. Jan. 19, 2011) (recognizing

that conviction of conspiracy requires proof of "an agreement to commit a

crime other than the crime that consists of the sale itself' and stating that

Appellate Case: 10-3384     Page: 63     Date Filed: 02/24/2011 Entry ID: 3759317

"[t]he fact that a transaction involves a large or wholesale quantity of drugs is insufficient to prove the existence of a conspiracy to possess with intent to distribute"); *United States v. Boidi,* 568 F.3d 24, 30 (1st Cir. 2009) (holding that "[e]vidence that a buyer intends to resell the product instead of personally consuming it does not necessarily establish that the buyer has joined the seller's distribution conspiracy").

The most that the government's conspiracy evidence was capable of proving was a conventional sales relationship that by the government's own account existed for a short time during 2006. That was not sufficient to prove a § 846 conspiracy. Other yawning problems with the government's evidence are worthy of note:

• *The weight does not compute.* Mr. Stiles testified that he had sold Mr. Huggans 600 to 700 kilograms of cocaine that he obtained from his Sais organization connections during 2006. Tr. II at 35, 89, 101-03. Mr. Rice testified that Mr. Stiles' did not become a customer of the Sais conspiracy until "the Spring of 2006." Tr. III at 24. Mr. Stiles ultimately agreed with that testimony. Tr. II at 28, 63-65. The Sais organization had stopped selling drugs to anyone in St. Louis by September, 2006. Tr. II at at 32; Tr.

Appellate Case: 10-3384    Page: 64    Date Filed: 02/24/2011 Entry ID: 3759317

III at 38.[13]  Mr. Stiles was selling the cocaine he obtained from the Sais organization in New York and New Jersey as well as in St. Louis.  Tr. II at 43.  He made several deliveries to those states and in the course of one transaction actually lost 25 kilograms of cocaine.  *Id.* at 33-34.  In St. Louis, Mr. Stiles did not claim to have been selling drugs to Mr. Huggans alone:  he acknowledged that his St. Louis customers had included Avery West, Kendrick Moore, Nikita Smith, Craig Small, and Ronald Clower.  *Id.* at 35, 78.  Mr. Stiles acknowledged that during there few months of his relationship with the Sais conspirators there was at least one "dry spell" lasting a month in which the organization supplied no drugs at all.  *Id.* at 76-77.  He claimed to have purchased in 10 kilogram quantities initially, then 50 kilogram quantities, and then—after the dry spell—20 to 35 kilogram quantities.  *Id.* at 30-32, 76-77.  Although there are many possible calculations of the amounts of cocaine that Mr. Stiles might have had left to sell to Mr. Huggans while supplying his other customers in Missouri, New York, and New Jersey, after losing roughly one week's shipment in New York, and being unable to purchase any cocaine at all for several weeks,

---

[13] Mr. Rice, who oversaw the conspiracy's operations in St. Louis, testified that its last delivery of cocaine occurred during July, 2006.  Tr. III at 38.

Appellate Case: 10-3384     Page: 65     Date Filed: 02/24/2011 Entry ID: 3759317

there is no reasonable calculation leaving him with a quantities approaching 600 kilograms for this defendant.[14]

• *The government previously had represented to another District Court that Mr. Stiles' involvement in the Sais conspiracy was limited to the distribution of between 15 and 50 kilograms of cocaine.* Mr. Stiles' plea agreement in the Sais prosecution, signed and presented by the same Assistant United States Attorney who handled the prosecution of Mr. Huggans, stated that Mr. Stiles' total offense conduct in the Sais drug trafficking conspiracy consisted of accountability for no more than 50 kilograms of cocaine. Tr. II at 89-90; Ex. 57, pp. 6, 15. That representation was made on October 26, 2007, some seven months after Mr. Stiles had peddled his story about Mr. Huggans to the government for yet greater reduction of his sentence. Tr. I at 27; Tr. II at 19-20; Plea Agreement, *United States v. Stiles,* No. 4:07-cr-184 (E.D. Mo.). This Court should not suffer that anomaly to be glossed over as some mere oddity of the plea bargaining process: there should be a modicum at least of common sense and consistency in a self-respecting criminal justice system. Mr. Stiles— and, as alleged in Mr. Huggans' post-trial motion, other defendants in the

---

[14] The District Court found Mr. Huggans "responsible for the distribution of at least four hundred kilograms of cocaine during the time he was part of the Sais conspiracy, and probably more." Add. at 12.

Appellate Case: 10-3384    Page: 66    Date Filed: 02/24/2011 Entry ID: 3759317

Sais case, App. at 270-84—were sentenced for their participation in the same conspiracy as Mr. Huggans on the basis of in-court, memorialized-in-writing representations *by the government, long after it received Mr. Stiles' self-serving proffer regarding Mr. Huggans,* about the quantity of drugs trafficked by that conspiracy. In this case the government the government revised history and persuaded the District Court that Mr. Huggans—a purported *customer* of the conspiracy—purchased far more drugs than its prior representations attributed to the co-conspirator who supposedly supplied him.

• *The government's faith in its own evidence was dubious at best.* The government had ample time between Mr. Stiles' proffer implicating Mr. Huggans during March, 2007, and the re-indictment of the actual Sais co-conspirators in May of that year, to name Mr. Huggans in the superseding charge. Tr. II at 19-20; Superseding Indictment, *United States v. Stiles,* No. 4:07-cr-184 (E.D. Mo.). In fact the conspiracy charge in this case was not filed until Mr. Huggans had pointed out in a motion that his involvement in the government's reverse sting operation in April, 2007, had been less than that found to have been insufficient to constitute an attempt in this Court's *Joyce* opinion. App. at 24-26, 29-33. That the superseding indictment alleged virtually no facts and named no names other than Mr. Huggans' own

suggests the government's hope—plainly never realized—that more evidence or a change of plea would materialize before the time of trial. In the end, the prosecution settled for a joint trial of its two marginal charges and the opportunity to bolster one with the other.

The metamorphosing theory and bought-and-paid-for testimony that comprised the government's conspiracy case against Mr. Huggans never had the capacity to prove more than a buyer-and-seller arrangement for one-way drug transactions. The judgment of conviction on Count I must be reversed for that reason.

Appellate Case: 10-3384    Page: 68    Date Filed: 02/24/2011 Entry ID: 3759317

# V.

**The evidence was insufficient to prove Mr. Huggans guilty of the attempt charge.**

> *Standard of review:* "The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

In *United States v. Joyce, supra,* this Court established a minimum of transactional conduct that the government must establish in order to prove the "substantial step" element of a prosecution for attempting to possess drugs for distribution. At best, the government's attempt evidence in this case proved that Mr. Huggans had gone almost as far into the reverse sting arranged for him as Mr. Joyce had gone into the transaction contrived in his case. This Court reversed Mr. Joyce's attempt conviction for want of proof that he had crossed the line between planning and preparation for a crime and taking the substantial step necessary to constitute an attempt. *Joyce,* 693 F.2d at 841. Mr. Huggans' conviction should be reversed for the same reason.

The elements of attempt are (1) intent to engage in the crime and (2) conduct amounting to a substantial step toward the commission of the crime.

*United States v. Burks,* 135 F.3d 582, 583 (8th Cir. 1998). Intent alone never is enough to prove attempt: "It is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in the commission of the particular crime." *United States v. Joyce,* 693 F.2d 838, 841 (8th Cir. 1982); *see also People v. Werblow,* 148 N.E. 786, 789 (N.Y. 1925) (Cardozo, J.) (recognizing that "[a]cts in furtherance of a criminal project do not reach the stage of an attempt unless they carry the project forward within dangerous proximity to the criminal end to be attained").

Proof of that substantial step must show "[s]omething more . . . than mere menaces, preparation, or planning." *People v. Miller,* 42 P.2d 308, 309 (Cal. 1935) (cited in *Joyce,* 693 F.2d at 842). *Joyce* explained that "the [attemptor's] act must have passed the preparation stage so that if it is not interrupted extraneously, it will result in a crime." *Id.* at 841-42 (quoting *United States v. Monholland,* 607 F.2d 1311, 1319 (10th Cir. 1979)). In *Monholland,* the Court of Appeals for the Tenth Circuit held that "[s]omething more is required than mere menaces, preparation, or planning." 607 F.2d at 1318-19.

In *Joyce* this Court held that the defendant had not crossed the line. 693 F.2d at 841-43. Mr. Joyce traveled at least as far into the drug transaction that the government had set up for him than did Mr. Huggans: he traveled from Tulsa to St. Louis with a suitcase full of cash as directed, arrived at the designated hotel room at the time that had been specified, insisted on seeing what he was buying, *and was handed the purported cocaine for examination. Id.* at 839-40. He refused to produce his money, left the hotel room, and was arrested in the hotel lobby. *Id.* at 840.[15]

This Court noted that Mr. Joyce had "both the opportunity and the ability to purchase the cocaine at the agreed upon price." 693 F.2d at 842. The transaction between Mr. Huggans and Mr. Rice—which was *conceived and implemented by the government*—did not and could not progress to a point at which Mr. Huggans had the opportunity or ability to purchase the cocaine: no drugs, real or fake, existed, and nothing of the kind was placed in his hands. Tr. III at 103-04. Mr. Rice had assured Mr. Huggans repeatedly in advance that they were meeting only to count money and that no drugs would be present and he and Mr. Huggans had agreed that there could be no transaction until Mr. Huggans had seen what he was buying. Tr.

---

[15] The rationale of *Joyce* cannot be that the defendant had abandoned the attempt: an individual cannot abandon an attempt "because the crime itself has already been completed." *United States v. Young,* 613 F.3d 735, 746 (8th Cir. 2010).

Appellate Case: 10-3384    Page: 71    Date Filed: 02/24/2011 Entry ID: 3759317

II at 146-47; Tr. III at 53-55. Finally, although he picked up the bag containing cash before walking out of the room, Mr. Rice knew that Mr. Huggans had not relinquished the money to him. Tr. III at 53-54, 58, 63.

The DEA agents in this case truncated their sting when they did knowing that the transaction was nowhere near —he had not relinquished his money or even allowed Mr. Rice to complete his counting, there was to be no package to inspect or accept, and in the absence of a product Mr. Huggans would not be going forward with the illusory drug transaction that the government had concocted. The most the government's evidence can establish is that Mr. Huggans was interested in Mr. Rice 's proposal, that he made preparations on his own and with Mr. Rice to participate in the transaction, and that he had plainly and repeatedly stated that he would not hand over his money or enter into a transaction absent the production and inspection of the cocaine.

The heart of the analysis in *Joyce* was this Court's recognition that "the defendant . . . had not yet committed an overt act strongly corroborative of the firmness of his criminal purpose." *Id.* at 843. The court explained that "the conduct which remained to be done . . . was the very conduct which separated mere preparation from a substantial step toward commission of the completed offense." *Id.* The opinion points out that an attempt would have



Appellate Case: 10-3384 Page: 72 Date Filed: 02/24/2011 Entry ID: 3759317

occurred "if Joyce had given [the agent] the money necessary to purchase the cocaine but [the agent] refused to give Joyce the cocaine." *Id.* at 843 n.5. If Mr. Joyce did not commit an attempt, then neither did Mr. Huggans. Mr. Huggans did not relinquish the money, no drugs were produced or were going to be produced, and the DEA-designed transaction never would progress beyond preparation and planning.

The government's evidence proved the opposite of what was required to sustain a conviction: Mr. Huggans' actions demonstrated his reservations about Mr. Rice's deal rather than the firmness of his resolve to complete a transaction with Mr. Rice. The conviction attempt should be reversed because of the insufficiency of that evidence.

Appellate Case: 10-3384    Page: 73    Date Filed: 02/24/2011 Entry ID: 3759317

# VI.

     **The District Court erred in finding that equitable tolling does not apply to the five-year limitation period provided by 21 U.S.C. § 851(e) and concluding that Mr. Huggans was not entitled to challenge the validity of drug convictions that occurred in 1990 and 1995. Alternatively, if § 851(e) is not subject to equitable tolling, the sentence enhancement provisions of § 851 violate due process when applied on the basis of convictions that fall without the limitation period and that a defendant has a substantial basis for challenging.**

     *Standard of review:* Limitations periods customarily are subject to traditional equitable tolling principles. *Young v. United States,* 535 U.S. 43, 49 (8th Cir. 2002). A district court's refusal to apply equitable tolling is reviewed *de novo. United States v. Martin,* 408 F.3d 1089, 1092-93 (8th Cir. 2005).

     "It is hornbook law that limitations periods are 'customarily subject to equitable tolling' unless tolling would be 'inconsistent with the text of the relevant statute.'" *Young,* 535 U.S. at 49 (quoting *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95 (1990), and *United States v. Beggerly,* 524 U.S. 38, 48 (1998)). Mr. Huggans invoked equitable tolling in support of his challenge to the validity of his two aged state court drug felony convictions. App. at 224-48. If the District Court was correct in holding that equitable tolling is not available under § 851(e), the enhancement statute enables extended imprisonment without due process of law and thus violates the Fifth Amendment. If the court was incorrect and equitable tolling is

permissible, this Court should vacate Mr. Huggans' sentence and remand the case so that he may challenge his state court drug felony convictions.

The purpose of a statute of limitations is to protect litigants and courts from having to deal with stale claims. *Washburn v. Soper,* 319 F.3d 338, 342-43 (8th Cir. 2003). The purpose of equitable tolling is fairness—"to ameliorate inequities that can arise from strict application of a statute of limitations." *Chung v. United States Department of Justice,* 333 F.3d 273, 275-76 (D.C.Cir. 2003). In *Irwin v. Veterans Administration,* 498 U.S. 89 (1990), the Supreme Court recognized that "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling,'" and concluded that the doctrine should be equally available to litigants opposed by the government. *Id.* at 95-96.

Nothing in Congress' articulation of a limitation period in § 851(e) suggests that this statute is exempt from tolling in the interest of equity. The "fairly simple language" ordinarily used in limitations statutes implies an exception for such tolling. *United States v. Brockamp,* 519 U.S. 347, 350 (1997). Section 851(e) is such a statute. In *Brockamp* the Supreme Court contrasted simple and straightforward limitation provisions with a particular tax code provision that "sets forth its limitations in a highly detailed technical manner," "reiterates its limitations several times in several

Appellate Case: 10-3384     Page: 75     Date Filed: 02/24/2011 Entry ID: 3759317

different ways," "sets forth . . . very explicit exceptions [that] do not include 'equitable tolling,'" and could not be interpreted as implicitly embracing the doctrine of equitable tolling without "work[ing] a kind of linguistic havoc." *Id.* at 350-52. Finding the implication of susceptibility to equitable tolling in § 851(e) portends no such trouble.

If the limitation period of § 851(e) is not subject to equitable tolling, the statute violates due process at least when applied to a defendant with a reasonable basis for challenging a conviction that is more than five years old. The Constitution prohibits the federal government from depriving any person of his or her liberty without due process of law. U.S. Const. amend. V; *see Sell v. United States,* 539 U.S. 166, 177-78 (2003). The promise of due process is broken when government action "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency." *Dowling v. United States,* 493 U.S. 342, 353 (1990) (internal quotes omitted). The requirement of due process cannot be reconciled with the denial of reasonable opportunity to challenge historical convictions upon which the government seeks to obtain a mandatory sentence of imprisonment for life.

Appellate Case: 10-3384    Page: 76    Date Filed: 02/24/2011 Entry ID: 3759317

Subjecting Mr. Huggans to a radically enhanced prison sentence on the basis of prior convictions that were colorably subject to proof of constitutional infirmity, without affording him an opportunity to make that proof, violated "fundamental conceptions of justice" and any reasonable construct of "the community's sense of fair play and decency." To be sure, due process would be doubly offended by a sentence imposed on the basis of convictions that themselves "offend 'a sense of justice.'" *Rochin v. California,* 342 U.S. 165, 173 (1952) (quoting *Brown v. Mississippi,* 297 U.S. 278, 285-86 (1936)). Enforcement of the limitation provision of § 851(e) undeer those circumstances would deprive Mr. Huggans of a fundamental constitutional right.

Appellate Case: 10-3384    Page: 77    Date Filed: 02/24/2011 Entry ID: 3759317

<div align="center">

**VII.**

</div>

**The District Court erred in denying Mr. Huggans' motion for a new trial based on newly discovered evidence.**

> *Standard of review:* The denial of a motion for a new trial based on newly discovered evidence is reviewed for abuse of discretion. *United States v. Ward,* 544 F.2d 975, 977 (8th Cir. 1976). A district court abuses its discretion when its ruling reflects "a clear error of judgment." *Verizon Communications, Inc., v. Inverizon International, Inc.,* 295 F.3d 870, 873 (8th Cir. 2002). When a finding of fact by the court in a bench tried case is determinative of the ultimate question of guilt, the evidence as a whole is reviewed in the light most favorable to the government to determine whether it supports the finding. *United States v. Rischard,* 471 F.2d 105, 106 (8th Cir. 1973). Any other factual finding in such a case is reviewed under a clearly erroneous standard. *Id.*

After the District Court had found him guilty, Mr. Huggans obtained copies of the presentence reports of Sais conspirators Sammy Jefferson and Eric Earnest. App. at 273-74. Those reports memorialized the government's in-court representations that Mr. Jefferson and Mr. Earnest, like Mr. Stiles, each had been responsible for no more than 50 kilograms of cocaine. *Id.* Mr. Jefferson and Mr. Earnest also provided Mr. Huggans with affidavits attesting that Mr. Huggans was not a member of the conspiracy to which they had pled guilty. *Id.* at 278-79, Ex. A, B. Mr. Huggans sought a new trial on the basis of that newly discovered evidence. *Id.* at 270-84. The District Court's denial of that motion was an abuse of discretion.

Appellate Case: 10-3384    Page: 78    Date Filed: 02/24/2011 Entry ID: 3759317

To be entitled to a new trial on the basis of newly discovered evidence, a defendant must meet five criteria: (1) the evidence must have been discovered since the trial, (2) he must allege facts from which the district court may infer diligence on his part, (3) the evidence must not be merely cumulative or impeaching, (4) it must be material to the issues in the case, and (5) it must be likely that the newly discovered evidence would produce an acquittal at a new trial. *Ward,* 544 F.2d at 976. Mr. Huggans' motion satisfied each of those requirements.

Mr. Huggans alleged that the presentence reports had been filed under seal and had not previously been available to him. App. at 274. His motion thus satisfied the first criterion for entitlement to a new trial. *Ward,* 544 F.2d at 976.[16] Further, his diligence was not open to question: defense counsel continuously sought clarification about the scope and personnel of his purported conspiracy. Tr. Mar. 11, 2008, at 23-24; Tr. Jan. 15, 2009, at 96-97; App. at 34-37, 60-63. The newly discovered evidence was not

---

[16] The District Court found that the defense had been aware of the presentence reports at the time of trial. App. at 285. A factual finding is clearly erroneous when, despite the existence of evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948). There is no indication in the evidence that Mr. Huggans or his counsel had or knew the content of Mr. Jefferson's or Mr. Earnest's presentence reports at the time of trial. Shortly before trial, counsel for the government assured the court that he had denied defense counsel's request for such reports. Tr. Jan. 15, 2009, at 96-97.

Appellate Case: 10-3384    Page: 79    Date Filed: 02/24/2011 Entry ID: 3759317

merely cumulative of other evidence nor was impeachment its particular utility, and that evidence was material to the issue of whether Mr. Huggans was the co-conspirator described by Mr. Stiles: the more proof Mr. Huggans could present regarding the limited scope of the conspiracy from which he was purported to have purchased upwards of a thousand kilograms of cocaine during a period of a very few months, the more improbable the government's charge against him became.

The final criterion for a viable new trial motion is that the newly discovered evidence would have been likely to produce an acquittal at a new trial. *Ward,* 544 F.2d at 976. In denying Mr. Huggans' motion, the District Court stated that "[t]he evidence against [him] was overwhelming" and thus that the evidence of Mr. Jefferson's and Mr. Earnest's presentence reports at trial would not have produced a different outcome. App. at 285. With due regard for the gravity of that ruling, *see Rischard, supra,* the evidence of Mr. Huggans' participation in the conspiracy alleged by the government simply was not overwhelming: Mr. Stiles' was testifying for a reward and was a practiced informant, Tr. II at 19-20, he testified with apparent pride that he had yet to be completely candid in his disclosures to DEA agents or his testimony in Mr. Huggans' trial, Tr. II at 87-88, and nobody else professed

Appellate Case: 10-3384    Page: 80    Date Filed: 02/24/2011 Entry ID: 3759317

to *know* a thing about Mr. Huggans' purported drug transactions with anybody having anything to do with the conspiracy.[17]

One would be hard-pressed to imagine conviction for participation in a drug trafficking conspiracy resting on thinner evidence than that adduced by the government against Mr. Huggans. The District Court's denial of his motion for a new trial based on newly discovered evidence reflects a "clear error of judgment," *Verizon Communications,* 295 f.3d at 873, that this Court should correct.

---

[17] The District Court, on the other hand, was commendably candid in offering Mr. Huggans an opportunity to reconsider his waiver of trial by jury:

> I know stuff about you that a jury won't know . . . I'm not going to consider that prior stuff when I decide the case . . . but I'm a human being, I know that stuff . . . I'm going to be very careful and listen to the evidence in your case, but you should understand that that is different . . . [A jury] wouldn't know anything about why you're detained or anything else.

Tr. Jan. 15, 2009, at 125.

Appellate Case: 10-3384     Page: 81     Date Filed: 02/24/2011 Entry ID: 3759317

# VIII.

**The District Court erred in failing to review of the presentence reports of the government's convicted witnesses *in camera* to determine whether they contained exculpatory evidence or impeachment material.**

> *Standard of review:* A district court's failure to conduct *in camera* review of the presentence reports of cooperating government witnesses when invited to do so is reviewed for abuse of discretion. *United States v. Garcia,* 562 F.3d 947, 952 (8th Cir. 2009).

Mr. Huggans requested the production of presentence reports pertaining to the government's cooperating witnesses prior to trial. Tr. Jan. 15, 2009, at 96-97. Counsel for the government apprised the District Court shortly before trial that he had refused the request because he was "not at liberty to turn those over," but that he would produce the reports if instructed to do so by the court. *Id.* The District Court moved on to another matter and did not respond to that invitation. *Id.* at 97. Because of the probability that the reports sought by defense counsel contained information that would tend to exculpate Mr. Huggans or aid his impeachment of key government witnesses, the District Court's failure to review the presentence reports *in camera* was an abuse of discretion.

Mr. Stiles admitted his own lack of candor and his testimony was ripe with opportunism and driven by self-interest. The government's other cooperating witnesses included Mr. Rice, his wife Deborah Rice, and

81

Issachard Lopez.  Like Mr. Stiles, each of them was currying favor with the prosecution.  Mr. Lopez agreed that the government was to ask his sentencing court to withdraw his prison sentence in exchange for his cooperation.  Tr. I at 185-86.  Mrs. Rice had gotten a favorable sentence in exchange for her agreement to cooperate and entertained hope of further sentence reduction.  *Id.* at 136, 138.   Mr. Rice testified about his lengthy history of cooperating with law enforcement officials when arrested, allowed that he had become adept at "serv[ing] people up to the . . . Government" in order to minimize his own punishment, and acknowledged that he hoped to receive further reduction of his present sentence in exchange for testifying against Mr. Huggans.  Tr. III at 8-9, 14-15.  In a drug trafficking conspiracy prosecution that had no evidence of drugs, followed vast surveillance in which the defendant *never* appeared, and was totally dependent upon the credibility of a bought-and-paid-for convicted drug dealer, it was more than reasonable to anticipate that presentence investigations of cooperating witnesses would contain exculpatory or impeachment material.

In *Garcia* this Court concluded that the district court's failure to conduct in camera review of the presentence reports of the government's cooperating witnesses had been an abuse of discretion requiring remand of the case.  562 F.3d at 953.  The Court held:

Appellate Case: 10-3384    Page: 83    Date Filed: 02/24/2011 Entry ID: 3759317

> [W]here . . . the defendant has sought access to a
> coconspirator's PSR, the government has recognized the
> possibility that the PSR contains *Brady/Giglio* information and
> requested *in camera* review, and the district fails to carry out
> such review, the district court abuses its discretion.

*Id.* In the present case, Mr. Huggans sought access to the presentence

reports of his purported co-conspirators in the Sais drug trafficking

organization. Although the government did not specifically recognize the

possibility that the reports contained material that must be disclosed to the

defense and did not go so far as to request *in camera* review, the Assistant

United States Attorney did lay the matter before the court to no avail.

The essence of *Garcia* was not the government's request for *in

camera* review—a court must be the final arbiter of whether particular

information must be disclosed—but the presence of a reasonable basis for

believing that the requested material may satisfy the Brady/Giglio

materiality standard. 562 F.3d at 953. That basis existed in this case as

surely as it did in *Garcia:* counsel for the government brought the issue to

the attention of the District Court on his own initiative and the conspiracy

charge against Mr. Huggans depended entirely upon the credibility of

cooperating witnesses.

The potential for constitutional harm that required reversal in *Garcia*

was present here as well. The District Court's failure to review the

Appellate Case: 10-3384     Page: 84     Date Filed: 02/24/2011 Entry ID: 3759317

presentence reports was an abuse of discretion.  This Court should remand the case to the District Court with instruction to review the presentence reports and order a new trial if it finds undisclosed *Brady/Giglio* information that could have changed the outcome of the case.  *Id.*

## CONCLUSION

The judgments of conviction should be reversed and Mr. Huggans'
sentence vacated for the reasons set forth in this brief. Depending on the
basis for reversal, the Court should direct that Mr. Huggans be discharged or
remand the case to the District Court for a new trial, resentencing, and/or in
camera review of presentence reports pertaining to cooperating witnesses for
the prosecution.

<div style="margin-left:40%">

_____/s/  Michael A. Gross_____
Michael A. Gross
Sher Corwin LLC
190 Carondelet Plaza, Suite 1100
St. Louis, Missouri 63105
Telephone:  (314) 721-5200
Facsimile:  (314) 721-5201

</div>

Appellate Case: 10-3384    Page: 86    Date Filed: 02/24/2011 Entry ID: 3759317

## FED.R.APP.P. 35(a)(7)(C) AND 8TH CIR. R. 28A STATEMENT

This brief has been prepared pursuant to Fed.R.App. 35(a)(7)(B). The brief has been printed in 14-point Times New Roman font using Microsoft Word 2004 for Macintosh. Based upon the word-count function of that word processing application, the brief contains 17,243 words.

_____

Michael A. Gross

Appellate Case: 10-3384    Page: 87    Date Filed: 02/24/2011 Entry ID: 3759317

## CERTIFICATE OF SERVICE

This brief has been submitted for review through the Court's CM/ECF

system on February 24, 2011, to be served electronically upon counsel

registered to receive notification by that system.

_____/s/  Michael A. Gross_____
Michael A. Gross

Appellate Case: 10-3384     Page: 88     Date Filed: 02/24/2011 Entry ID: 3759317