UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 09-3441

# UNITED STATES OF AMERICA

Appellee

vs.

# DARWIN MARKEITH HUGGANS

Appellant

Appeal From the United States District Court
For the Eastern District of Missouri
The Honorable Catherine D. Perry, District Judge

# ADDENDUM TO APPELLANT'S BRIEF

Michael A. Gross
Sher Corwin LLC
190 Carondelet Plaza, Suite 1100
St. Louis, Missouri 63105
Telephone: (314) 721-5200

Attorney for Appellant

# TABLE OF CONTENTS

|                                                    | Page |
|----------------------------------------------------|------|
| Judgment and Sentence                              | 1    |
| Order, Findings and Conclusions of District Court  | 8    |
| Report and Recommendation of Magistrate Judge      | 26   |
| 21 U.S.C. § 841                                    | 49   |
| 21 U.S.C. § 846                                    | 57   |
| 21 U.S.C. § 851                                    | 58   |
| Certificate of Service                             | 60   |

Appellate Case: 10-3384     Page: 2     Date Filed: 02/24/2011 Entry ID: 3759318

# United States District Court

### Eastern District of Missouri

UNITED STATES OF AMERICA

v.

**JUDGMENT IN A CRIMINAL CASE**

DARWIN MARKEITH HUGGANS
A/K/A MARK HUGGANS

CASE NUMBER: S1-4:07CR00541 CDP

USM Number: 34513-044

THE DEFENDANT:

Donnell Smith
Defendant's Attorney

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☒ was found guilty on count(s)   One, Two, and Three of the Superseding Indictment on January 15, 2009 by a bench trial
after a plea of not guilty

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 USC 841(a)(1) and 846 and 851(a) | Conspiracy to Distribute and Possess With Intent to Distribute More Than Five Kilograms of Cocaine | December 20, 2007 | One |
| 21 USC 841(a)(1) and 851(a) | Attempt to Possess With Intent to Distribute in Excess of Five Kilograms of Cocaine | April 12, 2007 | Two |
| | Criminal Forfeiture | | Three |

The defendant is sentenced as provided in pages 2 through   6   of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____                  dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 7, 2009

Date of Imposition of Judgment

Signature of Judge

CATHERINE D. PERRY

UNITED STATES DISTRICT JUDGE

Name & Title of Judge

October 7, 2009

Date signed

Appellate Case: 10-3384     Page: 3     Date Filed: 02/24/2011 Entry ID: 3759318

DEFENDANT: DARWIN MARKEITH HUGGANS
A/K/A MARK HUGGANS
CASE NUMBER: S1-4:07CR00541 CDP
District: Eastern District of Missouri

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of LIFE.

This term of imprisonment consists of terms of life on each of counts one and two, all such terms to run concurrently.

☐ The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ a.m./p.m. on _____

   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____

   ☐ as notified by the United States Marshal

   ☐ as notified by the Probation or Pretrial Services Office

## MARSHALS RETURN MADE ON SEPARATE PAGE

Appellate Case: 10-3384    Page: 4    Date Filed: 02/24/2011 Entry ID: 3759318

DARWIN MARKEITH HUGGANS
DEFENDANT: A/K/A MARK HUGGANS
CASE NUMBER: S1-4:07CR00541 CDP
District:   Eastern District of Missouri

Judgment-Page ___3___ of ___6___

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of   10 years.

This term of supervision consists of a ten-year term of supervised release on each of counts one and two, all such trms to run concurrently.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

☐ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The Defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment

The defendant shall comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

**DARWIN MARKEITH HUGGANS**
DEFENDANT:  A/K/A MARK HUGGANS
CASE NUMBER:  S1-4:07CR00541 CDP
District:    Eastern District of Missouri

# ADDITIONAL STANDARD CONDITIONS OF SUPERVISION

WHILE ON SUPERVISION, THE DEFENDANT SHALL COMPLY WITH THE STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THIS COURT AS WELL AS THE FOLLOWING ADDITIONAL CONDITIONS:

1. The defendant shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of commencement of supervision and at least two periodic drug tests thereafter for use of a controlled substance.

2. The defendant shall participate in a drug or alcohol abuse treatment program approved by the United States Probation Office, which may include substance abuse testing, counseling, residence in a Community Corrections Center, residence in a Comprehensive Sanctions Center, Residential Re-entry Center, or in-patient treatment in a treatment center or hospital. The defendant shall pay for the costs associated with substance abuse treatment based on a co-payment fee established by the United States Probation Office. Co-payments shall never exceed the total costs of services provided.

3. The defendant shall submit his person, residence, office, or vehicle to a search conducted by the United States Probation Office at reasonable times and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

Appellate Case: 10-3384    Page: 6    Date Filed: 02/24/2011 Entry ID: 3759318

DARWIN MARKEITH HUGGANS
DEFENDANT: A/K/A MARK HUGGANS
CASE NUMBER: S1-4:07CR00541 CDP
District:    Eastern District of Missouri

Judgment-Page __5__ of __6__

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on sheet 6

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $200.00 | | |

☐ The determination of restitution is deferred until _____ . *An Amended Judgment in a Criminal Case* (AO 245C)
will be entered after such a determination.

☐ The defendant shall make restitution, payable through the Clerk of Court, to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below. However, pursuant ot 18 U.S.C. 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| | Totals: | | |
|---|---|---|---|
| | | | |

☐ Restitution amount ordered pursuant to plea agreement _____

☐ The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ The interest requirement is waived for the.    ☐ fine and /or    ☐ restitution.

    ☐ The interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

DARWIN MARKEITH HUGGANS
DEFENDANT: A/K/A MARK HUGGANS
CASENUMBER: S1-4:07CR00541 CDP
District:   Eastern District of Missouri

Judgment Page __6__ of __6__

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A ☒ Lump sum payment of $200     due immediately, balance due

       ☐ not later than _____ , or

       ☐ in accordance with ☐ C, ☐ D, or    ☐ E below; or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with     ☐ C,   ☐ D, or   ☐ E below; or ☐ F below; or

C ☐ Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of _____ e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of _____ over a period of _____ e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after Release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time: or

F ☒ Special instructions regarding the payment of criminal monetary penalties:

IT IS FURTHER ORDERED that the defendant shall pay to the United States a special assessment of $100 on each count, for a total of $200, that shall be due immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are made to the clerk of the court.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several
     Defendant and Co-defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:

U.S. Currency in the amount of $6 million dollars ($6,000,000.00) and all property listed in the Preliminary Order of Forfeiture (Document Number 124)

Payments shall be applied in the following order: (1) assessment; (2) restitution principal, (3) restitution interest, (4) fine principal, (5)fine interest (6) community restitution.(7) penalties, and (8) costs, including cost of prosecution and court costs.



DARWIN MARKEITH HUGGANS
DEFENDANT: A/K/A MARK HUGGANS
CASE NUMBER: S1-4:07CR00541 CDP

USM Number: 34513-044

# UNITED STATES MARSHAL
# RETURN OF JUDGMENT IN A CRIMINAL CASE

I have executed this judgment as follows:

The Defendant was delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

☐ The Defendant was released on _____ to _____ Probation

☐ The Defendant was released on _____ to _____ Supervised Release

☐ and a Fine of _____ ☐ and Restitution in the amount of _____

_____
UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

I certify and Return that on _____, I took custody of _____

at _____ and delivered same to _____

on _____ F.F.T. _____

U.S. MARSHAL E/MO

By DUSM _____

007

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:07CR541 CDP |
| ) | |
| DARWIN MARKEITH HUGGANS, ) | |
| ) | |
| Defendant. ) | |

## ORDER, FINDINGS AND CONCLUSIONS

After defendant waived jury trial, the Court held a bench trial, which began

on January 20, 2009. The evidence was concluded after five days of evidence and

almost thirty witnesses. After a delay requested by both counsel, I set the

conclusion of the trial for March 4, 2009, for the purpose of stating my decision on

the charges in open court. The day before, however, defendant filed a new motion

to dismiss, and so, after a hearing, I ordered supplemental briefing, set a new

hearing date for March 13, 2009, and withheld the conclusion of the bench trial.

On March 13 I denied the motion, for the reasons stated on the record and for the

reasons that follow. I also announced my finding of guilt on the charges in the

superseding indictment, for the reasons stated on the record in open court and as

set forth in more detail here.

Appellate Case: 10-3384    Page: 10    Date Filed: 02/24/2011 Entry ID: 3759318

## Motion to Dismiss

Defendant's late-filed motion argues that the government had withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995). At the March 13, 2009, hearing, defendant withdrew all affidavits and other evidentiary support referred to in his initial motion[1] so the case was before me only on the legal arguments. Defendant's position is that the government is obligated to disclose, as exculpatory evidence covered by *Brady*, whether persons believed to be involved in the drug business were questioned about Huggans and denied that he was involved in the cocaine trade in St. Louis. Defendant argues that if law enforcement officers or prosecutors interviewed people who said they did *not* have any information about this defendant, that would be exculpatory because it would impeach the government's witnesses at trial who said defendant *was* involved in the drug trade. Defendant says that the cumulative effect of such denials would be exculpatory.

In *Kyles* the Supreme Court held that a court should consider the cumulative

---

[1]These exhibits were handed to the Court at the March 4 hearing but were never filed. Two were unsigned affidavits and two were photocopies of affidavits. Defense counsel explained on March 13 that counsel did not have signed originals as they themselves had not been involved in procuring the documents, and so they withdrew them and asked the Court to ignore the arguments about the "affidavits" in the initial brief.

- 2 -

Appellate Case: 10-3384    Page: 11    Date Filed: 02/24/2011 Entry ID: 3759318

effect of wrongfully withheld exculpatory evidence in order to determine whether it was material and therefore a *Brady* violation. 514 U.S. at 436. Defendant here makes a slightly different argument: he says that if neutral evidence (unrelated drug dealers' statements that they had not dealt with Huggans) is considered collectively (there might be a lot of them), then the evidence is transformed from neutral evidence to exculpatory evidence. He also argues that anyone who is known to have spoken to the government about the defendant must be presumed to have provided exculpatory evidence unless the government calls that person as a witness. This is simply not the law, and it ignores the reality of criminal investigations and prosecutions.

In this case there is no reason to believe that the government withheld exculpatory evidence. The government was not required to call as witnesses all people that the police might have talked to about defendant, and the court will not presume that its failure to call everyone who might have given an interview means that those people had exculpatory evidence. I also will not presume that neutral evidence – such as other drug dealers in St. Louis not knowing Huggans – somehow must be disclosed under *Brady*. It is not exculpatory, and the cumulative effect of that kind of neutral evidence is still neutral, not exculpatory. Moreover, defendant withdrew the affidavits he had initially presented, and has

- 3 -

provided no evidence whatsoever to show that the government questioned anyone

who provided even arguably exculpatory evidence. The motion is denied.

## Findings and Conclusions

On the charges in the superseding indictment, the Court makes the

following findings and conclusions, as required upon request under Rule 23(c),

Fed. R. Crim. P.:

## COUNT I

In Count I defendant Darwin Markeith Huggans is charged with conspiracy

to distribute and possess with the intent to distribute more than five kilograms of

cocaine, in violation of 21 U.S.C. §846 and 841(a)(1) and punishable under 21

U.S.C. § 841(b)(1)(A)(ii)(II).

The elements of this crime are that:

Two or more people reached an agreement or came to an understanding to

distribute and possess with the intent to distribute cocaine;

Defendant voluntarily and intentionally joined in the agreement or

understanding, either at the time it was first reached or at some later time while it

was still in effect;

At the time defendant joined the agreement or understanding, he knew its

illegal purpose; and

- 4 -

Appellate Case: 10-3384   Page: 13   Date Filed: 02/24/2011 Entry ID: 3759318

The amount of cocaine involved in the conspiracy and reasonably foreseeable to the defendant exceeded five kilograms.

The superseding indictment alleges a conspiracy beginning in 2000 and continuing up to the date of the indictment, which was December 20, 2007.

The government has proven each of the elements of the charged offense beyond a reasonable doubt. The evidence establishes that at least as early as 2002, a conspiracy existed between Luis Sais and others to distribute cocaine and other narcotics from Mexico in the United States. Luis Sais ran his organization from jail in Mexico. Members of the conspiracy would pick up cocaine from Dallas and other Texas cities and drive it in vehicles with hidden compartments to various other locations, including St. Louis. Defendant Huggans joined this conspiracy at least as early as the summer of 2006. Huggans was responsible for distribution of at least four hundred kilograms of cocaine during the time he was part of the Sais conspiracy, and probably more. All these things the government proved beyond a reasonable doubt.

During and before trial, defendant argued that the government had failed to specify sufficiently the conspiracy it intended to prove. This argument sounds vaguely like a claim that the government proved a conspiracy different from that alleged, although defendant has certainly not articulated an objection that there are

- 5 -

multiple conspiracies while the indictment alleged one. To the extent defendant is attempting to argue that his rights were violated in this respect, the argument fails. The government proved beyond a reasonable doubt the conspiracy charged in the indictment, that Huggans joined the conspiracy involving Luis Sais, Anthony Stiles, and others during 2006, and that he was an active participant in it. The government also presented evidence, admissible under Rule 404(b), Fed. R. Evid., that Stiles and Huggans were involved in drug distribution activities before that time, where their source of supply was someone other than Sais.

"A single conspiracy is composed of individuals sharing common purposes or objectives under one general agreement." *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006). The participants can change over time and not all conspirators need be aware of the activities of the others. *Id.* In some cases a defendant may be prejudiced by the government's alleging one conspiracy and proving multiple conspiracies. *See United States v. Garth,* 540 F.3d 766, 777 (8th Cir. 2008); *United States v. Barth*, 424 F.3d 752, 759 (8th Cir. 2005). To show a violation of his rights, however, the defendant must show both that there has been a variance and that he has been prejudiced by it. *Id.* I do not believe that there was any variance between the indictment and proof in this case. The government always has the option of electing "to proceed on a subset of the allegations in the

- 6 -

Appellate Case: 10-3384    Page: 15    Date Filed: 02/24/2011 Entry ID: 3759318

indictment, proving a conspiracy smaller than the one alleged." *United States v. Buckley*, 525 F.3d 629, 634 n. 2 (8th Cir. 2008) (quoting and agreeing with *United States v. Duff*, 76 F.3d 122, 126 (7th Cir. 1996)). To the extent the dates in the indictment were broader than the dates proven, that is not a variance.

Even if there had been a variance, however, it caused no prejudice to Huggans. I am basing my determination of his guilt on the substantial evidence showing that he participated, along with Anthony Stiles, in the Sais conspiracy, and not on evidence of any other conspiracy. Cases generally recognize that prejudice may result where the indictment provides insufficient notice of what the evidence expected at trial will be, or where the indictment is so vague that a defendant risks subsequent prosecution for the same conduct, or where the defendant is prejudiced by a "spillover" of evidence from one conspiracy to another. *Garth*, 540 F3d at 777. Defendant argued before trial that he was not given sufficient notice of the government's case, but this argument is belied by defendant's own motions and arguments, which reflect that he had been advised that the government intended to present evidence of defendant's drug dealing with Anthony Stiles, which is what the government presented. Huggans had sufficient notice of the charges, the indictment is not so vague as to raise double jeopardy problems, and he has not been prejudiced by any spillover of evidence from one

- 7 -

Appellate Case: 10-3384    Page: 16    Date Filed: 02/24/2011   Entry ID: 3759318

conspiracy to another. *See United States v. Cain*, 487 F.3d 1108, 1113-14 (8th
Cir. 2007). As in the recent Eighth Circuit cases cited above, the government
proved beyond a reasonable doubt that defendant was involved in all the criminal
activity proven. The Sais conspiracy began before Huggans joined it, but join it he
did.

Based on all the evidence, I find the defendant GUILTY as charged in
Count I of the Superseding Indictment of violating 21 U.S.C. § 846, and I find that
he is subject to punishment under 21 U.S.C. § 841(b)(1)(A)(ii)(II).

## COUNT II

Count II of the superseding indictment charges Huggans with attempting to
possess with the intent to distribute more than five kilograms of cocaine,
beginning in March 2007 and continuing until April 12, 2007, in violation of 21
U.S.C. § 841(a)(1) and 846, and punishable under 21 U.S.C. § 841(b)(1)(A)(ii).

The elements of this crime are:

The defendant intended to possess with intent to distribute more than five
kilograms of cocaine;

The defendant knew the material he intended to possess with intent to
distribute was cocaine; and

The defendant voluntarily and intentionally carried out some act which was

- 8 -

Appellate Case: 10-3384    Page: 17    Date Filed: 02/24/2011 Entry ID: 3759318

a substantial step toward possession with intent to distribute more than five kilograms of cocaine.

The government has proven each of the elements of the charged offense beyond a reasonable doubt. Defendant made arrangements with a cooperating individual to purchase twenty kilograms of cocaine for $340,000, or $17,000 per kilogram. He met the cooperating individual at an agreed location and they drove to a hotel to count the money. The cooperating individual wore an audio recording device, and the meeting in the hotel room was video recorded. Once in the hotel room, the other man began counting the money. After it had been partially counted, Huggans urged the other man to hurry up, and downplayed the need to count it all. In fact he had only brought $329,320 to the meeting, and so was short almost $11,000. Eventually they put the money Huggans had brought into a duffel bag the cooperating witness had brought, and began to leave the room, with the cooperating witness now carrying the bag with the money. Huggans was then arrested.

Huggans argues that he cannot be found guilty of attempt because during the meeting he said that he wanted to see the cocaine before he would pay the money. The cooperating witness said he would call the driver to bring the cocaine, and in fact made a telephone call – supposedly to the driver, although it

- 9 -

was actually to the arrest team. The evidence is more than sufficient to show, beyond a reasonable doubt, that Huggans is guilty of attempt. He took several substantial steps toward possession with intent to distribute 20 kilograms of cocaine, most obviously, bringing over three hundred thousand dollars to the person he believed would sell him cocaine.

Huggans' reliance on *United States v. Joyce*, 693 F.2d 838 (8th Cir. 1982) is misplaced. In *Joyce* the defendant took back his money and called off the deal when the he and the seller could not agree who would go first: the defendant kept saying he would not show the money until the seller showed the drugs, and the seller (undercover officer) kept saying he would not show the drugs until he saw the money. That is a far cry from what happened here: Huggans merely said that he wanted to see the drugs before he would agree that the cooperating individual could keep the money, but he actually transferred possession of the money to the supposed seller of the drugs. When they left the hotel room together, the seller was carrying the money. The evidence showed beyond a reasonable doubt that Huggans was intending, and attempting, to complete the purchase at the time of his arrest. He did not in any way back out of the deal or try to stop it – he took several very substantial steps, and the government proved the crime of attempt beyond a reasonable doubt.

- 10 -

Appellate Case: 10-3384    Page: 19    Date Filed: 02/24/2011 Entry ID: 3759318

Based on all the evidence, I find the defendant GUILTY as charged in Count II of the Superseding Indictment of violating 21 U.S.C. § 841(a)(1) and 846, and I find that he is subject to the punishment set out in 21 U.S.C. § 841(b)(1)(A)(ii).

## COUNT III

Count III is a forfeiture count brought under 21 U.S.C. § 853, and alleges that numerous items of property constituted or were derived from proceeds of the illegal conduct alleged in Counts I and II, and were used or intended to be used to commit or facilitate commission of those crimes. The government seeks to forfeit six million dollars in currency or property. It lists thirteen specific items of property. I conclude that the government has proven beyond a reasonable doubt that it is entitled to forfeiture of $6,000,000, and that most of the specific property alleged in the indictment represents proceeds of the illegal conduct proven in Counts I and II or was used to facilitate that conduct. Certain items were purchased before Huggans joined the Sais conspiracy, and so the government concedes that they are not subject to forfeiture.

To prove entitlement to criminal forfeiture, the government must prove that the property was obtained, directly or indirectly, as a result of the offenses of conviction, or that it was used or intended to be used to facilitate that crime. 21

- 11 -

Appellate Case: 10-3384   Page: 20   Date Filed: 02/24/2011 Entry ID: 3759318

U.S.C. § 853(a). The statute creates a rebuttable presumption that property of a defendant convicted of a drug trafficking crime is subject to forfeiture if the government shows, by a preponderance of the evidence, that the property was acquired by the defendant during the period of the violation of the law or within a reasonable time after that, or that there was no likely source for such property other than the violation of the law proven in the earlier counts. 21 U.S.C. § 853(d).

Anthony Stiles testified that he sold Huggans 600 to 700 kilograms of cocaine during the time Stiles was distributing cocaine for Sais. Huggans was his largest customer. Even discounting Stiles' testimony to assume that Huggans was responsible for only 400 kilograms, and assuming the price Huggans received was only $17,000 per kilogram (which is again, discounting the evidence), Huggans' illegal proceeds from this conspiracy amounted to $6.8 million, which exceeds the amount the government seeks in forfeiture. The government has shown that it is entitled to forfeiture of this amount, and it will be entitled to a judgment of $6 million at sentencing. It has also shown that it is entitled to forfeiture of the specific items of property listed in the indictment, with two exceptions.

Item (1) listed in Count III is the currency in the amount of $329,320 that Huggans brought to the hotel on April 12, 2007, to purchase 20 kilograms of

- 12 -

Appellate Case: 10-3384   Page: 21   Date Filed: 02/24/2011 Entry ID: 3759318

cocaine. This money was used to facilitate the crime proven in count II, and there is no doubt that it is appropriately forfeited.

Item (2) is $13,569 in currency found on defendant's person and in his house when he was arrested after the original indictment in this case was returned in October of 2007. This money was proceeds of Huggans' illegal activity, and will be forfeited.

Items (3), (5), (8), and (9) are vehicles (a 2006 Ironhorse Trailer, A 2005 Suzuki Hayabusa motorcycle, a 2006 Lincoln Navigator, and a 2006 Nissan Altima) that Huggans purchased during the time of the conspiracy proven in Count I or shortly thereafter, and all are subject to forfeiture. Two of the vehicles – the Lincoln Navigator and the Nissan Altima – were also used to facilitate the crimes.

Items (6) and (7) (a 2001 Chevrolet Camaro SS and a 2000 Suzuki Hayabusa motorcycle) are vehicles that Huggans acquired before he joined this conspiracy, and so they are not subject to forfeiture.

Item (4) is a Ford F-150 truck that Huggans was driving when he met the cooperating individual to discuss setting up the 20 kilogram sale in April of 2007. This truck was directly used to facilitate the crime of attempt proven in Count II, and it should therefore be forfeited.

Item (10) is real property – a house with the address of 4387 Westhampton

- 13 -

Appellate Case: 10-3384    Page: 22    Date Filed: 02/24/2011 Entry ID: 3759318

Place Court, St. Charles, MO – which Huggans purchased in the summer of 2006 for approximately $367,000. Huggans borrowed $220,000 to buy this home, but he paid an additional amount of almost $140,000. He deposited $35,000 when he signed the contract, and paid the rest at closing. The source of these funds was his drug dealing, and the conspiracy proven in Count I. This house was also used to facilitate the crimes, as cash and a money counter were found there at the time of Huggans' October 2007 arrest.

Items (11), (12) and (13) are bank accounts and investments that were obtained during the course of the conspiracy, and they are subject to forfeiture under the statutory presumption.

Defendant argues that he was a legitimate real estate investor and that he bought, rehabbed, and sold houses for a profit, and that this is the source of his wealth. The evidence showed that he did rehab and sell at least one house, but the financial records do not show that he made any substantial amounts of money from this business. He has failed to show any substantial amounts of legitimate income, and certainly not enough to justify the many purchases he made. Additionally, Huggans misrepresented his earnings and employment to numerous people with whom he conducted "legitimate" business, frequently falsely stating that he was employed as a manager in a relative's janitorial business, when in fact

- 14 -

Appellate Case: 10-3384    Page: 23    Date Filed: 02/24/2011 Entry ID: 3759318

he had never worked there. His lying about his legitimate income tends to show that he did not have legitimate income. Although he may have "dabbled" in real estate and rehabbing, that business certainly did not provide sufficient income to account for his substantial cash flow. His counsel attempted to argue that he was a successful gambler, but there is absolutely no evidence to suggest that gambling earnings provided the means for purchasing the items the government seeks to forfeit.

Finally, the government proved that within a month of the April 12, 2007 sting operation (Huggans was arrested and then released pending prosecution), Huggans gave away numerous automobiles and over $100,000 in cash to family members or friends. He also quit-claimed his ownership interest in several pieces of real property to others. These numerous transfers for little or no value immediately following his arrest after the failed attempt to buy 20 kilograms of cocaine show a person trying to protect his ill-gotten assets from forfeiture.

Although it is a matter that I can reconsider at sentencing, if requested to do so, I have considered whether requiring the forfeitures sought here would constitute an excessive fine so as to violate the constitution. I conclude that it would not, given the magnitude of defendant's drug trafficking operation. Defendant Huggans was a very large distributor of drugs, responsible for ten to

- 15 -

twenty kilograms of cocaine coming into the St Louis market multiple times a month. A conservative estimate from the evidence makes him personally responsible for over 400 kilograms of cocaine, and so the forfeitures here are not excessive.

I find that the property listed in Count III of the Superseding Indictment, with the exception of items (6) and (7), is subject to forfeiture under 21 U.S.C. § 853.

## Sentencing Issues

Before trial the government filed a Criminal Information under 21 U.S.C. § 851(a)(1), charging defendant with two prior felony drug convictions. This would result in defendant's sentencing range going from a ten-year mandatory minimum with maximum of life to a sentence of mandatory life imprisonment under 21 U.S.C. § 841(b)(1)(A). Under § 851(b) the court shall inquire of defendant whether he affirms or denies that he has been previously convicted as alleged. I made that inquiry of defense counsel at the hearing today, and counsel indicated he wished to consult with his client before I asked defendant the question directly. Under § 841(c), if the defendant denies the allegation or claims that any conviction is invalid, he must file a written response. If defendant claims that any conviction is invalid, he must set forth "with particularity in his response" his

- 16 -

Appellate Case: 10-3384    Page: 25    Date Filed: 02/24/2011 Entry ID: 3759318

claim and any factual basis for the claim. This order sets the deadline for filing such a response as the same date that objections to the presentence report must be filed. If defendant fails to file a response by that date, he will have waived his right to challenge any prior conviction.

As I have found defendant guilty as charged and pronounced the finding of guilt in open court in defendant's presence, I will set the matter for sentencing. Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion and amended motion to dismiss [#109, 114] are denied.

**IT IS FURTHER ORDERED** that sentencing in this case is set for **Wednesday, June 3, 2009 at 1:00 p.m.** Any objections to the presentence report must be filed on or before **May 13, 2009.**

**IT IS FURTHER ORDERED** that defendant must file any written response to the criminal information regarding his prior offenses [#89] no later than **May 13, 2009**. If a written response is filed, the Court will hear the matter on **Wednesday, June 3, 2009 at 1:00 p.m.**, at the beginning of the sentencing hearing.

**IT IS FURTHER ORDERED** that if either party expects to introduce testimony at the sentencing hearing, they must notify the Court no later than

- 17 -

Appellate Case: 10-3384   Page: 26   Date Filed: 02/24/2011 Entry ID: 3759318

May 20, 2009. Any sentencing memorandum must be filed no later than May 27, 2009.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2009.

- 18 -

Appellate Case: 10-3384     Page: 27     Date Filed: 02/24/2011 Entry ID: 3759318

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                       )
     Plaintiff,        )
                       )
     vs.                )
                       )   Case No. 4:07CR0541 SNL (AGF)
DARWIN MARKEITH HUGGANS,  )
                       )
     Defendant.       )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the pretrial motions filed by Defendant, Darwin Markeith Huggans. Pretrial matters were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). Defendant filed a motion and amended motion to dismiss indictment (Doc. Nos. 20 & 50), a motion for bill of particulars (Doc. Nos. 21 & 40), a motion to sever charged offenses (Doc. No. 52), and a request for discovery (Doc. No. 49), which, at Defendant's request at the hearing, was redocketed as a motion for discovery (Doc. No. 55). An evidentiary hearing was held on March 11, 2008. The government was represented by Assistant United States Attorneys Dean Hoag and James Delworth. Defendant was present and represented by his attorneys, Nick A. Zotos and Michael A. Gross.

## Background and Proceedings

On September 13, 2007, Defendant was charged in a two count indictment with attempt to possess with the intent to distribute cocaine, and criminal forfeiture. The

Appellate Case: 10-3384    Page: 28    Date Filed: 02/24/2011 Entry ID: 3759318

attempt charge arises out of a reverse sting, conducted in March and April, 2007, in which cooperating witnesses proposed to transfer 30 kilograms of cocaine to Defendant for an initial payment of $340,000. Conversations pertaining to the transaction were recorded by audio or video tape. Following the indictment, Defendant filed certain motions, including a motion for a bill of particulars and motion to dismiss the attempt to possess charge, asserting that the government's evidence could not support such a charge. (Doc. Nos. 20 & 21).

The government thereafter filed a superseding indictment, adding as Count I a charge of conspiracy to distribute and possess with the intent to distribute in excess of five kilograms of cocaine. The attempt and forfeiture counts contained in the initial indictment were reasserted as Counts II and III of the superseding indictment. Defendant thereafter filed an amended motion to dismiss, directed at the conspiracy count, as well as a second motion for a bill of particulars and a motion to sever.

At the hearing, with regard to the conspiracy count, the government reiterated information it had provided to Defendant previously, both informally and at a prior hearing, namely, that in Count I the government intended to prove that Defendant was a member of the Anthony Stiles conspiracy. Anthony Stiles, Curtis Rice and eighteen other defendants were charged in this district in an indictment dated March 15, 2007, Case No. 4:07CR00184 ERW. Count I of that indictment charged that beginning on or about December, 2005, and continuing to the date of the indictment, Anthony Stiles, Curtis Rice, the other named defendants, and Luis Sais, Jr. conspired with other persons known

2

Appellate Case: 10-3384    Page: 29    Date Filed: 02/24/2011 Entry ID: 3759318

and unknown to knowingly and intentionally distribute and possess with intent to distribute cocaine and marijuana. The means and manner of the conspiracy were set forth in detail, and asserted in part that unindicted co-conspirator Sais was the organizer and leader of a drug-trafficking organization, operating a large, multi-state distribution network that included St. Louis, Missouri. It alleged that Anthony Stiles was one of the primary hub distributors in the St. Louis region, distributing multi-kilogram quantities of cocaine and marijuana. Count II alleged a money-laundering conspiracy involving Stiles, Rice and certain of the named defendants covering the same time period.

At some point, Stiles and Rice began to cooperate with the government. Stiles was interviewed by government agents and identified Defendant as a customer who received multi-kilogram quantities of cocaine during the prior few years. On March 26, 2007, at the direction of the agents, Stiles contacted Defendant and allegedly advised him that he (Stiles) was receiving 25-30 kilograms of cocaine from his source of supply. Thereafter, Stiles and Rice had a series of meetings and telephone calls with Defendant, most or all of which were recorded by audio tape or video tape, which culminated in a proposed transaction by which Defendant was to receive 30 kilograms of cocaine for an initial purchase price of $340,000. The plan provided for Rice to meet Defendant on April 12, 2007, at the Best Western Hotel in Kirkwood, Missouri, where they would count the money in a hotel room. Rice would have an associate nearby to deliver the cocaine after the money was counted. The meeting, which was video taped, did in fact take place in the hotel room on April 12, 2007. Defendant produced hundreds of thousands of dollars

3

Appellate Case: 10-3384    Page: 30    Date Filed: 02/24/2011 Entry ID: 3759318

which was counted by Rice. Following the counting of the funds, Rice pretended to make a telephone call to the individual who was supposed to deliver the cocaine. As they left the hotel room with the money, immediately after the call, Defendant was arrested.

Prior to the evidentiary hearing in the instant case, the government made available to Defendant all of the discovery related to the Stiles investigation, including discovery materials pertaining to Defendant's participation. In the response to Defendant's motions, the government alleged that Defendant was the recipient of hundreds of kilograms of cocaine sold to him in 2005 - 2006. The discovery materials pertaining to Defendant Huggans related to the Stiles investigation covered the period from the Spring of 2006 through April, 2007.

In its discovery, the government also produced information pertaining to certain narcotics transactions that Defendant allegedly conducted with an individual named Henderson, in 2005, and an individual named Gavin, in 2006. At the hearing, the government clarified that the discovery pertaining to Henderson and Gavin was produced as Rule 404(b) material. As set forth in the government's second response to Defendant's pre-trial motions (Doc. 54), the names of Henderson and Gavin were provided to Defendant on January 15, 2008, and defense counsel provided Defendant with a copy of the discovery materials. On January 16, 2008, Henderson was shot twice with an AK-47 outside his mother's home, which is in the same block as Defendant's mother's house. As a result, the government advised Defendant and the Court that it would not be making any further 404(b) disclosures at this time. Rather, after discussing the matter with the

4

Appellate Case: 10-3384    Page: 31    Date Filed: 02/24/2011    Entry ID: 3759318

District Judge, the government proposed to make any further disclosures of 404(b)
materials shortly before trial, and to arrange a hearing on such disclosures before the
District Judge. Defendant did not object to proceeding in that fashion with regard to
further 404(b) disclosures.

At the hearing on Defendant's motions, the government reiterated the information
previously provided regarding the nature and scope of the alleged conspiracy, namely,
that Defendant is alleged to have participated in the conspiracy involving Anthony Stiles
and others, described in Case No. 4:07CR00184 ERW. The government further agreed,
within 30 days, to produce any further details regarding Defendant's involvement in the
conspiracy that it might receive as a result of further de-briefing of Stiles. Subject to
Defendant advising the Court of any continuing problems following the receipt of this
information, Defendant agreed that his motion for a bill of particulars would be moot. In
light of the information pertaining to the nature of the conspiracy at issue, Defendant also
conceded that the conspiracy charge in Count I would not be subject to dismissal based
on alleged insufficiency of the evidence.

As such, the motion to dismiss before the Court pertains solely to Count II and
Defendant's assertion that the government has insufficient evidence in support of the
attempt charge. At the hearing, the parties did not present any testimony. Rather, the
parties offered argument and requested that the Court review, in chambers, certain audio
and video recordings of conversations and meetings with Defendant pertinent to
Defendant's motions to dismiss Count II. Govt. Ex. 1. Following the hearing, the

5

Appellate Case: 10-3384    Page: 32    Date Filed: 02/24/2011 Entry ID: 3759318

undersigned did review Govt. Ex. 1, consisting of audio recordings, video recordings, and transcripts of most of the recordings. Thereafter, the matter was taken under submission. At Defendant's request, trial has been continued to June 16, 2008.

## A. MOTION TO DISMISS ATTEMPT CHARGE

In support of his motion to dismiss, Defendant asserts that Count II should be dismissed because the government has insufficient evidence to prove he is guilty of the charge. Specifically, Defendant contends that the government's evidence "is insufficient as a matter of law to prove that Mr. Huggans took a substantial step toward the completion of the crime." Doc. No. 22, p. 1.

The parties agree that the elements of attempt charge are (1) an intent to engage in the criminal offense and (2) conduct constituting a substantial step towards the commission of the crime. See United States v. Burks, 135 F.3d 582, 583 (8th Cir. 1998), accord United States v. Joyce, 693 F.2d 838, 841 (8th Cir. 1982) (describing elements of attempt as "(1) an intent to engage in criminal conduct, and (2) conduct constituting a 'substantial step' towards the commission of the substantive offense which strongly corroborates the actor's criminal intent"). In defining what constitutes "a substantial step," the Eighth Circuit has held:

> A substantial step must be something more than mere preparation, yet may
> be less than the last act necessary before the actual commission of the
> substantive crime. . . . In order for behavior to be punishable as an attempt,
> it need not be incompatible with innocence, yet it must be necessary to the
> consummation of the crime and be of such a nature that a reasonable
> observer, viewing it in context could conclude beyond a reasonable doubt
> that it was undertaken in accordance with a design to violate the statute.

6

Appellate Case: 10-3384    Page: 33    Date Filed: 02/24/2011 Entry ID: 3759318

United States v. Mazzella, 768 F.2d 235, 240 (8th Cir. 1985) (quoting United States v. Manley, 632 F.2d 978, 987-88 (2d Cir. 1980)).

Here, Defendant does not question that the first element is met; he concedes that Defendant possessed the requisite intent to commit the offense. He argues, however, that the government's evidence cannot suffice to prove to the second element: the substantial step. In support of this assertion, Defendant relies primarily on the holding in United States v. Joyce, 693 F.2d 838 (8th Cir. 1982). He asserts that a review of the government's evidence, including the recorded telephone calls and meetings the cooperating witnesses had with Defendant, demonstrates that Defendant's conduct simply was not enough to cross "the line that separates planning and preparation for a crime from a punishable attempt to commit the crime." Doc. No. 22, p. 6.

Defendant's motion fails for several independent reasons. First, an assessment of the sufficiency of the government's evidence is simply inappropriate at this stage of the proceedings. The law is clear that an indictment that is valid on its face is immune from attack by a claim that there was insufficient competent evidence presented to the grand jury. Costello v. United States, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial of the charge on its merits. The Fifth Amendment requires nothing more."). Absent a stipulation to the facts, the law likewise recognizes that an indictment is not subject to a motion to dismiss based on allegations of the insufficiency of the government's evidence. As the Court stated in United States v. Ferro:

7

Appellate Case: 10-3384    Page: 34    Date Filed: 02/24/2011    Entry ID: 3759318

> "In civil cases, of course the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56 may be utilized to test, pretrial, the sufficiency of the evidence to establish triable issues of fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29. . . . [W]e simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be."

252 F.3d 964, 968 (8th Cir. 2001) (quoting United States v. DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000)); accord, United States v. Nelson, 165 F.3d 1180, 1182 (8th Cir. 1999) ("It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury."); United States v. Brown, 481 F.2d 1035, 1041 (8th Cir. 1973) ("There is no authority under Rule 12 . . . to dismiss on the basis of a sufficiency-of-the-evidence defense which raises factual questions embraced in the general issue."); (United States v. Kowal, 486 F. Supp. 2d 923, 934-35 (N.D. Iowa 2007) (denying motion to dismiss as procedurally infirm). As expressed by the court in DeLaurentis, "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence."

From Defendant's motion and argument, it is clear that Defendant is asking this Court to assess the evidence and conclude that the evidence would be insufficient to constitute a "substantial step." None of the cases assessing attempt charges cited by Defendant, including Joyce, involved a motion to dismiss charges pre-trial, nor did the Court find any such cases in its own research. Rather, the cases assessing whether a criminal defendant took a "substantial step" all involved a review of the evidence post-

8

trial. As such, Defendant's motion should be denied as premature, subject to proper assertion under Rule 29 following the presentation of the government's case.

Second, even if pretrial dismissal were available at this stage of the case, it would not be available on this record. Defendant conceded at the hearing that for this Court to entertain a motion to dismiss, the facts must be unequivocal. See United States v. Rodriguez, 2006 WL 435581, at *3 (D.N.D. 2006) ("Unless there is a stipulated record, a pretrial motion challenging the government's charge is not a permissible vehicle for addressing the sufficiency of the government's evidence.") (citing DeLaurentis, 230 F.3d 660-61). Here, the facts are not unequivocal for several reasons. Initially, the Court notes that because of the poor sound quality, it cannot decipher what transpired during the meeting between Stiles and Defendant on March 27, 2007. From the brief summary of the meeting contained in the government's brief, the evidence regarding the meeting could impact the determination of the attempt charge. Presumably the government will offer testimony at trial as to what transpired at that meeting. At trial, the government will likely also offer other circumstantial evidence, not reflected on the tapes, in support of the charge. See Burks, 135 F.3d at 584 (relying on circumstantial evidence in support of attempt charge).

Moreover, it is clear from this Court's review of the tapes and the parties' arguments that the determination of Defendant's culpability will depend upon the inferences to be drawn from the evidence contained on the tapes, and those inferences are subject to interpretation and dispute. Such matters are better left to the jury, after hearing

9

Appellate Case: 10-3384    Page: 36    Date Filed: 02/24/2011 Entry ID: 3759318

the evidence at trial. Further, in order to grant Defendant's motion, the Court would need to draw those inferences in the manner suggested by Defendant. But as the Eighth Circuit recognized in Burks, on a review of the sufficiency of the evidence, any inferences must be drawn in favor of the government, not in favor of Defendant. Burks, 135 F.3d at 583 (holding, "we examine the evidence in the light most favorable to the jury verdict and give that verdict the benefit of all reasonable inferences"). As the Court will discuss below, if the inferences from the evidence are drawn in the manner suggested by the government, Defendant's motion cannot succeed on the merits.

Third, the Court rejects Defendants' argument that dismissal would be warranted under Joyce, in any event. Essentially Defendant argues that the government's evidence, viewed in the light most favorable to the government,[1] shows conduct by Defendant that is less than, and certainly not more than, the defendant's conduct in Joyce. Inasmuch as the Eighth Circuit found the defendant's conduct in Joyce insufficient as a matter of law to constitute a substantial step, Defendant urges this Court to make the same finding here.

---

[1] In his memorandum, Defendant did not cite any case law setting forth the standard by which a pretrial motion to dismiss a criminal indictment should be determined. At the hearing, Defendant suggested application of the same standard used in Joyce, which assessed the sufficiency of the evidence post-trial, namely, "whether the evidence, taken in its entirety and viewed most favorably to the government, is sufficient to prove beyond a reasonable doubt" that Defendant attempted to purchase cocaine with the intent to distribute. Id. at 840.

10

Assuming, arguendo, the Court were to engage in such a review,[2] the Court rejects the notion that the transaction here did not progress as far as the one found insufficient in Joyce.

In Joyce, the police conducted a "reverse sting operation," in which undercover officers posed as sellers and solicited major drug transactions with suspected drug dealers. In connection with that operation, a government informant, who testified to having prior drug dealings with Joyce, contacted Joyce to advise him of the availability of drugs for purchase. The defendant flew from Oklahoma City to St. Louis to meet with undercover officers posing as drug dealers. He met with the undercover officers in a hotel room, where he immediately asked to see the cocaine, and persisted in his request. After he professed his interest in dealing and stated that he could "handle" a pound for $20,000, the officer, Officer Jones, left the hotel room, retrieved the cocaine from his office, and returned to the hotel room, handing Joyce a package wrapped in duct-tape. Joyce repeatedly returned the package to the officer, insisting that it be opened for his examination. The officer refused to fully open the package until Joyce showed him his money. Joyce, however, refused to produce the money until the officer first opened the package. After the officer persisted in demanding to first see the money, Joyce stated "he

_____

[2]As set forth above, the Court disagrees that it is appropriate to assess *the evidence* in such a manner at this stage, even accepting the evidence in the light most favorable to the government. See Kowal, 486 F.Supp.2d at 934 (noting, "[o]n a pretrial motion to dismiss an indictment pursuant to Rule 12(b), the court must accept all factual allegations *in the Indictment* as true.") (emphasis added) (citing United States v. Sampson, 371 U.S. 75, 78-79 (1962)).

11

Appellate Case: 10-3384   Page: 38   Date Filed: 02/24/2011 Entry ID: 3759318

would not deal with officer Jones no matter how good the cocaine was." Id. at 840.
Having reached an impasse, the officer told Joyce to leave, and Joyce did so "with no
apparent intention of returning at a later time to purchase any cocaine." Id. As he left the
hotel room, he was arrested. Officers thereafter obtained a search warrant and found
$22,000 in cash in Joyce's luggage.[3]

The Court reversed Joyce's conviction for attempt to possess with the intent to
distribute cocaine, finding that "[w]hatever intention Joyce had to procure cocaine was
abandoned prior to the commission of a necessary and substantial step to effectuate the
purchase of the cocaine." Id. at 841. The Court further explained that it was undisputed
that Joyce "unambiguously refused either to produce his money or to purchase the
cocaine," and that it was this conduct by Joyce that "negated the government's efforts to
consummate the sale." Id. at 842. The Court also further clarified its holding, noting,
however, that "if Joyce had given Jones the money necessary to purchase the cocaine but
Jones refused to give Joyce the cocaine, Joyce would have committed an attempt to
possess cocaine with the intent to distribute." Id. at 843 n.5.

Both in his memorandum and at the hearing, Defendant contends that Defendant
"aborted the counting of the money" and "did not permit Mr. Rice to count his money."
Doc. No. 22, at 6, 8. Defendant further asserts that Defendant had not relinquished the
money and "would not be doing so." Id. at 8. Based on a review of the video tape of the

---

[3] It is not clear from the opinion whether the luggage containing the money was in
the room where the parties met or in Joyce's own room.

12

0037

Appellate Case: 10-3384   Page: 39   Date Filed: 02/24/2011 Entry ID: 3759318

events of April 12, however, the Court rejects both of these conclusions. At no time did

Defendant Huggans abort or abandon the transaction.[4] Were this Court – rather than the

jury – charged with making the factual determination, this Court would find as follows:

- On Tuesday, April 10, 2007, following several telephone calls and meetings that took place during the period from March 26, 2007 through April 9, 2007, Defendant indicated a desire to purchase twenty kilograms of cocaine, for $17,000 each, from Rice, with Rice agreeing to front Defendant "ten on top of that," for a total of thirty kilograms for an initial payment of $340,000.

- In Defendant's conversations with Stiles and Rice, Defendant acknowledged having purchased narcotics from Stiles on prior occasions, and to having purchased cocaine from other individuals in other cities.

- Defendant agreed with Rice that the transaction would take place on Thursday, April 12, 2007, after Rice supposedly returned to town, with Defendant stating, "Ok, for sure Thursday."

- During their discussion on April 10, 2007, Rice advised Defendant that they would count the money together at a hotel, then Rice would give Defendant's associate the telephone number of Rice's driver, and those two individuals would then meet for the exchange of the cocaine. Rice advised Defendant he would bring a money counting machine. Toward the end of the conversation, when Rice reiterated that he would get with Defendant and count the money, Defendant agreed, stating, "We'll work it out though. We'll find a way that's comfortable for both of us."

- On Thursday, April 12, 2007, following several telephone calls, Rice and Defendant agreed to meet at a hotel, where the money would be counted. Defendant stated that he wanted to "look at shoes to make sure they fit," presumably referring to the fact that he wanted to see the product. Rice reiterated that he would count the money first, and he then posed several

---

[4] The fact that the undersigned views the intent of Defendant's actions differently than Defendant asserts herein simply serves to illustrate why it is inappropriate for the Court to be determining this matter on a motion to dismiss, rather than submitting the matter to the jury.

13

Appellate Case: 10-3384   Page: 40   Date Filed: 02/24/2011 Entry ID: 3759318

different options for how the transaction could proceed thereafter. Defendant agreed to go forward, stating, "Alright. I'll be head' in you way in 20 minutes."

- In a subsequent call they discussed the fact that they would have future transactions, and that the next time they would handle the transaction differently. Between that call and the meeting, Defendant called Anthony Stiles to confirm that Rice was legitimate.

- Defendant thereafter met with Rice, indicating to him that an associate of Defendant's was following them with the other bag containing cash. Rice told Defendant that his associate would have to wait in the car. Defendant acceded to this condition, and thereafter advised his associate how to meet them. Upon the associate's arrival, Defendant indicated that he (Defendant) was getting the bag from his associate. Rice and Defendant then entered the hotel alone, with the money in two of Defendant's backpacks or duffel bags.

- In the hotel room, Defendant unzipped his bags and dumped the money out onto the bed. Rice then began counting the money, using a money counter. While the money was being counted, Defendant inquired how far away the driver was. Rice indicated that he could have him bring them up here or whatever or meet Defendant's man out front.

- As the money-counting continued, Defendant appeared to get impatient, and suggested that rather than count all of the money, that Rice grab some bundles and count those randomly, essentially proposing that Rice confirm that the $340,000 was there by doing a sampling, rather than them "F—ing around for two hours." Rice agreed. After sampling some bundles, and determining those samples contained the amounts indicated, Rice stated that the count had been on point. Defendant stated that he was ready to go, saying, "It's all here, I ain't got time for games."

- Rice asked Defendant to help him put the money back in the bag so they could get out of there, and Defendant did so. The cash was placed into a duffel bag that Rice had brought to the hotel room, and they walked toward the door, with Rice carrying the bag with the money.

- Rice told Defendant he would give him a Nextel number to call the driver, and Defendant confirmed that Rice would call while they were both together. After the call was made, Defendant and Rice exited the hotel

14

Appellate Case: 10-3384     Page: 41     Date Filed: 02/24/2011     Entry ID: 3759318

room with the money, at which time Defendant was arrested.

Summarizing, based on this Court's review of the audio and video tapes, this Court would find that Defendant and Rice reached an agreement for Defendant to purchase thirty kilograms of cocaine for an initial price of $340,000. Defendant agreed to proceeding with the transaction in the manner proposed by Rice. From the conversations, it is clear that Defendant had previously purchased cocaine from Stiles and others, and that he anticipated having further drug transactions with Rice. Defendant came to the hotel room with the agreed amount of funds,[5] and after counting a portion of the funds, Rice was content with the count, which Defendant assured him was all there. The funds were then transferred to Rice, and the two men left the hotel room to proceed with a transfer of the cocaine. Defendant desired to purchase the cocaine (for further distribution), intended to continue with the transaction, and but for his arrest, would have done so.

As such, the Court rejects Defendant's argument that the transaction here did not proceed as far as the transaction in Joyce. Here, unlike in Joyce, Defendant produced the funds and transferred those funds to Rice. Further, Defendant continuously acceded to Rice's conditions, up until the time of his arrest, and did nothing to abort the transaction. Indeed, the facts here are in line with those discussed in footnote 5 of the Joyce opinion. Here, Defendant brought the money to the hotel room, as Rice directed; confirmed the

---

[5] Actually, it turned out the payment was almost $11,000 short, which may explain why Defendant proposed a sampling, rather than a full count of the funds.

15

negotiated amount was all there; and gave the purchase money to Rice. It was the
government who thereafter prevented the transaction from going forward. In Joyce, the
Court stated that these facts would support a charge of attempt. Joyce, 693 F.2d at 843
n.5.

Fourth, the Court notes that the holding in Joyce has been subject to much
criticism and has been limited by later cases. The Eighth Circuit itself has recognized
that the conclusion in Joyce – that the defendant had not taken a substantial step prior to
abandoning the proposed purchase – has been "roundly criticized by other circuits."
United States v. Robinson, 217 F.3d 560, 564 n. 3 (8th Cir. 2000) (citing cases). Eighth
Circuit cases since Joyce have taken a far less restrictive approach, and have specifically
distinguished Joyce on the basis that it was Joyce who had ended the negotiations. See,
e.g., Burks, 135 F.3d at 584 (noting that in Joyce the defendant refused to show the
money, and that "[s]ubsequent decisions have also turned on whether it was the defendant
himself - rather than a third party - who ended the chain of events leading toward, but not
resulting in, the commission of a substantive crime"); United States v. Jonsson, 15 F.3d
759, 762 (8th Cir. 1994) (distinguishing Joyce on the fact that it was the defendant, not
the government agent, who broke off negotiations before consummation of the illegal
act); United States v. Mims, 812 F.2d 1068, 1077 (8th Cir. 1987) (recognizing that "[i]n
reaching this conclusion [in Joyce], however, we emphasized that it was Joyce who ended
the negotiations").

Finally, under the more recent case law from both the Eighth Circuit and other

16

Appellate Case: 10-3384    Page: 43    Date Filed: 02/24/2011 Entry ID: 3759318

circuits, the actions taken by Defendant here are plainly sufficient to constitute a "substantial step." See, e.g., United States v. Neal, 78 F.3d 901, 906-07 (4th Cir. 1996) (finding "substantial step" toward commission of crime where there was evidence from which jury could determine that the defendant entered into a definite agreement to sell cooperating witness crack cocaine; defendant stated it would take a little while to obtain the crack; defendant directed the purchaser to come back to his mother's house at a set time; defendant attempted to evade police when they arrived; and crack cocaine and drug paraphernalia were thereafter found in the vicinity, notwithstanding that defendant, having spotted police in the area, advised the purchaser there would be "no happenings" or no transaction at that time); United States v. Dworken, 855 F.2d 12, 20-21 (1st Cir. 1988) (holding the evidence was sufficient to support conviction for attempt to possess marijuana with intent to distribute based on evidence that the defendant attempted to act as a broker for sales of narcotics by undercover agent, even though transaction did not occur based on issues related to price and logistics) (collecting cases); Jonsson, 15 F.3d at 761-62 (Eighth Circuit holding that evidence was sufficient to support conviction for attempting to obtain explosive device where the defendant met with undercover agents four times to discuss purchase of weapons and explosives, final meeting was called at defendant's request, and parties negotiated price, even though no money changed hands, no automotive specifications were provided, and no delivery date or number of devices was set); United States v. Gaines, 969 F.2d 692, 698 (8th Cir. 1992) (holding evidence supported conviction for attempted possession of heroin though source for the heroin was

17

Appellate Case: 10-3384    Page: 44    Date Filed: 02/24/2011 Entry ID: 3759318

never identified or even proven to exist, and heroin was never recovered); Mims, 812 F.2d at 1078-79 (finding "substantial step" toward commission of possession of heroin where the defendant repeatedly contacted the coconspirator and offered definite sums of money for a quantity of cocaine, indicating that he had taken action to secure the money); accord, United States v. Lucas, 499 F.3d 769, 781 (8th Cir. 2007) (en banc) (finding "substantial step" toward obstruction of justice where a jury could find defendant asked two individuals to claim ownership of firearm found in apartment and each understood request to be in earnest) (citing Mims, 812 F.2d at 1077-78).

That Defendant may have reserved the right to retrieve the funds if he was dissatisfied with the cocaine, does not somehow preclude a finding of attempt. As the courts have recognized, a "substantial step" may be "less than the last act necessary before actual commission of the substantive crime." Mazzella, 768 F.2d at 240. Nor is a finding of attempt precluded by the fact that final completion was conditioned on certain conditions precedent. See Dworken, 855 F.2d at 19 (noting, "[i]n all unconsummated crimes, the intent to complete the crime is contingent on certain conditions precedent)." Here, there is more than ample evidence from which a jury could find that Defendant's conduct was "undertaken with a design to violate the statute." Mazzella, 786 F.2d at 240.

---

[6] Defendant's further argument, that in all attempt cases the drugs are present, has no basis. Defendant could cite no case law in support of this assertion, and the facts of other cases affirming attempt charges plainly show otherwise. See, e.g., Gaines, 969 F.2d at 699 (affirming attempt charge though seller could not find the cab driver holding his heroin); Mims, 812 F.2d at 1078-79.

18

And, like in Jonsson, there is no question that Defendant "continued to negotiate with the government agents until his arrest prevented him from doing so." Jonsson, 15 F.3d at 762.

For all of these reasons, Defendant's motion to dismiss Count II of the indictment should be denied.

## B. MOTION TO SEVER

Defendant seeks to sever Count I from Count II, pursuant to Fed.R.Crim.P. 14(a), asserting that the jury will be unable to separate the conspiracy charge from the attempt charge, and that in each case evidence of the one charge will unfairly influence the assessment of the other charge. "When a defendant moves for a severance, the [Court] must first determine whether joinder is proper under Federal Rules of Criminal Procedure 8. If joinder is proper, the Court still has discretion to order a severance under Federal Rules of Criminal Procedure 14." United States v. Darden, 70 F.3d 1507, 1526 (8th Cir. 1995). These rules are to be liberally construed in favor of joinder. Id.; United States v. Rock, 282 F.3d 548, 552 (8th Cir. 2002).

Even if joinder is proper, a conclusion that Defendant does not challenge here, Rule 14 provides that the court may order separate trials of counts or provide other relief if the joinder of offenses appears to prejudice the defendant or the government. Fed. R. Crim. P. Rule 14(a). The determination of whether to grant or deny severance is committed to the sound discretion of the trial court, and requires a balancing of the interest in judicial economy against the risk of prejudice. Zafiro v. U.S., 506 U.S. 534,

19

Appellate Case: 10-3384    Page: 46    Date Filed: 02/24/2011 Entry ID: 3759318

541 (1993); United States v. Felici, 54 F.3d 504, 506 (8th Cir. 1995). Courts have recognized that severance may be appropriate under Rule 14 where damaging evidence related to one count would not be admissible in a separate trial of the other count. United States v. Aldrich, 169 F.3d 526, 528 (8th Cir. 1999).

In this case, however, there can be little question that a joint trial of the two charges will promote judicial economy, as evidence of Defendant's participation in the conspiracy involving Stiles would be admissible in and pertinent to the attempt charge. Likewise, evidence of the attempt, and Defendant's statements leading up to that transaction, would be admissible in any separate trial of the conspiracy charge, as the government will argue that while the conspiracy had ended for Stiles and Rice, it had not ended for Defendant Huggans. For this same reason, it is clear that Defendant will not be prejudiced from the admission of evidence that otherwise would not be admissible in separate trials.

Nor is the Court persuaded that the jury will be unable to compartmentalize the evidence should severance be denied. The attempt charge is a discrete charge, related to a single transaction, discussed with only two other individuals, during the course of but a few weeks. There is no reason to suspect that the jury will be unable to separate this single transaction from the overall conspiracy charge. Indeed, it is commonplace to try a conspiracy case together with discrete charges related to individuals pertaining to particular transactions. Accordingly, Defendant's motion for severance of Counts I and II should be denied.

20

Appellate Case: 10-3384    Page: 47    Date Filed: 02/24/2011 Entry ID: 3759318

## C. **MOTION FOR DISCOVERY**

In his motion for discovery, Defendant seeks to require the government to produce all investigative reports pertaining to a separate conspiracy, involving an individual named Robert Woods. The issue pertaining to the investigation of Woods arose because defense counsel, in connection with another case, obtained applications and affidavits in support of a wiretap in the Woods case, in which Huggans was identified as a target of the intercepted calls.

At Defendant's request, the government has already produced the applications and affidavits, together with the logs of the telephone calls, and has agreed to try to locate a copy of the calls themselves. The government has asserted, however, that the Woods conspiracy is unrelated to the Stiles conspiracy at issue here. To the government's knowledge, there were no inculpatory calls pertaining to Defendant Huggans intercepted in the Woods case and the government does not intend to use any evidence from the Woods case in connection with the case now at issue.

At the hearing, the only basis Defendant could offer in support of its request for all investigative reports was the possibility – for which he had no support – that there could be some exculpatory evidence contained therein. The government has acknowledged that it is aware of its obligations under Brady, and has committed to produce any exculpatory evidence developed in the Woods investigation. Inasmuch as Defendant has offered nothing, whatsoever, to suggest that information relevant to these charges was developed in the Woods case, Defendant's motion for further discovery related to the Woods

21

Appellate Case: 10-3384    Page: 48    Date Filed: 02/24/2011   Entry ID: 3759318

investigation is denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss Count II of the Indictment |Doc. No. 20 & 50| be **Denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Sever |Doc. No. 52|, be **Denied**.

**IT IS HEREBY ORDERED** that Defendant's Motion for a Bill of Particulars [Doc. Nos. 21 & 40] is **Denied as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Discovery |Doc. No. 55| is **Denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Additional and Supplemental Motions [Doc. No. 48] is **Denied**. If and when Defendant develops good cause to file additional motions, he may seek leave of Court to file same.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).

Dated this 2nd day of May, 2008.

AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

22

Appellate Case: 10-3384    Page: 49    Date Filed: 02/24/2011  Entry ID: 3759318

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CR00541 SNL (AGF) |
| ) | |
| DARWIN MARKEITH HUGGANS, ) | |
| ) | |
| Defendant. ) | |

## COURT MEMORANDUM

Government Exhibit 1, which was admitted at the evidentiary hearing regarding

the above-referenced matter on March 11, 2008, is being filed in its original format.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated May 2, 2008.

Appellate Case: 10-3384    Page: 50    Date Filed: 02/24/2011  Entry ID: 3759318

United States Code Annotated

Title 21. Food and Drugs (Refs & Annos)

Chapter 13. Drug Abuse Prevention and Control (Refs & Annos)

Subchapter I. Control and Enforcement

Part D. Offenses and Penalties

### 21 U.S.C.A. § 841

### § 841. Prohibited acts A

### Effective: August 3, 2010
Currentness

#### Prohibited acts A

#### (a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

#### (b) Penalties

Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving--

(i) 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

(ii) 5 kilograms or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 100 grams or more of phencyclidine (PCP) or 1 kilogram or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 1,000 or more marijuana plants regardless of weight; or

(viii) 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $10,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $20,000,000 if the defendant is an individual or $75,000,000 if the defendant is other than an individual, or both. If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence. Notwithstanding section 3583 of Title 18, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

(B) In the case of a violation of subsection (a) of this section involving--

(i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;

(ii) 500 grams or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 10 grams or more of phencyclidine (PCP) or 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

Appellate Case: 10-3384   Page: 52   Date Filed: 02/24/2011   Entry ID: 3759318

(vi) 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight; or

(viii) 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $5,000,000 if the defendant is an individual or $25,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $8,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3584 of Title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

(C) In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

(D) In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term

of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

(E)(i) Except as provided in subparagraphs (C) and (D), in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 10 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 15 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,500,000 if the defendant is other than an individual, or both.

(ii) If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 30 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

(iii) Any sentence imposing a term of imprisonment under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

(2) In the case of a controlled substance in schedule IV, such person shall be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least one year in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment.

(3) In the case of a controlled substance in schedule V, such person shall be sentenced to a term of imprisonment of not more than one year, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $100,000 if the defendant is an individual or $250,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such persons shall be sentenced to a term of imprisonment of not more than 4 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $200,000 if the defendant is an individual or $500,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph may, if there was a prior conviction, impose a term of supervised release of not more than 1 year, in addition to such term of imprisonment.

(4) Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18.

(5) Any person who violates subsection (a) of this section by cultivating or manufacturing a controlled substance on Federal property shall be imprisoned as provided in this subsection and shall be fined any amount not to exceed--

(A) the amount authorized in accordance with this section;

(B) the amount authorized in accordance with the provisions of Title 18;

(C) $500,000 if the defendant is an individual; or

Appellate Case: 10-3384   Page: 54   Date Filed: 02/24/2011   Entry ID: 3759318

(D) $1,000,000 if the defendant is other than an individual;
or both.

(6) Any person who violates subsection (a), or attempts to do so, and knowingly or intentionally uses a poison, chemical, or other hazardous substance on Federal land, and, by such use--

(A) creates a serious hazard to humans, wildlife, or domestic animals,

(B) degrades or harms the environment or natural resources, or

(C) pollutes an aquifer, spring, stream, river, or body of water,
shall be fined in accordance with title 18, United States Code, or imprisoned not more than five years, or both.

(7) Penalties for distribution. (A) In general. Whoever, with intent to commit a crime of violence, as defined in section 16 of Title 18 (including rape), against an individual, violates subsection (a) of this section by distributing a controlled substance or controlled substance analogue to that individual without that individual's knowledge, shall be imprisoned not more than 20 years and fined in accordance with Title 18.

(B) Definitions. For purposes of this paragraph, the term "without that individual's knowledge" means that the individual is unaware that a substance with the ability to alter that individual's ability to appraise conduct or to decline participation in or communicate unwillingness to participate in conduct is administered to the individual.

### (c) Offenses involving listed chemicals

Any person who knowingly or intentionally--

(1) possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter;

(2) possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter; or

(3) with the intent of causing the evasion of the recordkeeping or reporting requirements of section 830 of this title, or the regulations issued under that section, receives or distributes a reportable amount of any listed chemical in units small enough so that the making of records or filing of reports under that section is not required;

shall be fined in accordance with Title 18 or imprisoned not more than 20 years in the case of a violation of paragraph (1) or (2) involving a list I chemical or not more than 10 years in the case of a violation of this subsection other than a violation of paragraph (1) or (2) involving a list I chemical, or both.

### (d) Boobytraps on Federal property; penalties; "boobytrap" defined

(1) Any person who assembles, maintains, places, or causes to be placed a boobytrap on Federal property where a controlled substance is being manufactured, distributed, or dispensed shall be sentenced to a term of imprisonment for not more than 10 years or fined under Title 18, or both.

(2) If any person commits such a violation after 1 or more prior convictions for an offense punishable under this subsection, such person shall be sentenced to a term of imprisonment of not more than 20 years or fined under Title 18, or both.

(3) For the purposes of this subsection, the term "boobytrap" means any concealed or camouflaged device designed to cause bodily injury when triggered by any action of any unsuspecting person making contact with the device. Such term includes guns, ammunition, or explosive devices attached to trip wires or other triggering mechanisms, sharpened stakes, and lines or wires with hooks attached.

## (e) Ten-year injunction as additional penalty

In addition to any other applicable penalty, any person convicted of a felony violation of this section relating to the receipt, distribution, manufacture, exportation, or importation of a listed chemical may be enjoined from engaging in any transaction involving a listed chemical for not more than ten years.

## (f) Wrongful distribution or possession of listed chemicals

(1) Whoever knowingly distributes a listed chemical in violation of this subchapter (other than in violation of a recordkeeping or reporting requirement of section 830 of this title) shall, except to the extent that paragraph (12), (13), or (14) of section 842(a) of this title applies, be fined under Title 18 or imprisoned not more than 5 years, or both.

(2) Whoever possesses any listed chemical, with knowledge that the recordkeeping or reporting requirements of section 830 of this title have not been adhered to, if, after such knowledge is acquired, such person does not take immediate steps to remedy the violation shall be fined under Title 18 or imprisoned not more than one year, or both.

## (g) Internet sales of date rape drugs

(1) Whoever knowingly uses the Internet to distribute a date rape drug to any person, knowing or with reasonable cause to believe that--

(A) the drug would be used in the commission of criminal sexual conduct; or

(B) the person is not an authorized purchaser;
shall be fined under this subchapter or imprisoned not more than 20 years, or both.

(2) As used in this subsection:

(A) The term "date rape drug" means--

(i) gamma hydroxybutyric acid (GHB) or any controlled substance analogue of GHB, including gamma butyrolactone (GBL) or 1,4-butanediol;

(ii) ketamine;

(iii) flunitrazepam; or

(iv) any substance which the Attorney General designates, pursuant to the rulemaking procedures prescribed by section 553 of Title 5, to be used in committing rape or sexual assault.

The Attorney General is authorized to remove any substance from the list of date rape drugs pursuant to the same rulemaking authority.

(B) The term "authorized purchaser" means any of the following persons, provided such person has acquired the controlled substance in accordance with this chapter:

(i) A person with a valid prescription that is issued for a legitimate medical purpose in the usual course of professional practice that is based upon a qualifying medical relationship by a practitioner registered by the Attorney General. A "qualifying medical relationship" means a medical relationship that exists when the practitioner has conducted at least 1 medical evaluation with the authorized purchaser in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The preceding sentence shall not be construed to imply that 1 medical evaluation demonstrates that a prescription has been issued for a legitimate medical purpose within the usual course of professional practice.

(ii) Any practitioner or other registrant who is otherwise authorized by their registration to dispense, procure, purchase, manufacture, transfer, distribute, import, or export the substance under this chapter.

(iii) A person or entity providing documentation that establishes the name, address, and business of the person or entity and which provides a legitimate purpose for using any "date rape drug" for which a prescription is not required.

(3) The Attorney General is authorized to promulgate regulations for record-keeping and reporting by persons handling 1,4-butanediol in order to implement and enforce the provisions of this section. Any record or report required by such regulations shall be considered a record or report required under this chapter.

### (h) Offenses involving dispensing of controlled substances by means of the Internet

#### (1) In general

It shall be unlawful for any person to knowingly or intentionally--

(A) deliver, distribute, or dispense a controlled substance by means of the Internet, except as authorized by this subchapter; or

(B) aid or abet (as such terms are used in section 2 of Title 18) any activity described in subparagraph (A) that is not authorized by this subchapter.

#### (2) Examples

Examples of activities that violate paragraph (1) include, but are not limited to, knowingly or intentionally--

(A) delivering, distributing, or dispensing a controlled substance by means of the Internet by an online pharmacy that is not validly registered with a modification authorizing such activity as required by section 823(f) of this title (unless exempt from such registration);

(B) writing a prescription for a controlled substance for the purpose of delivery, distribution, or dispensation by means of the Internet in violation of section 829(e) of this title;

(C) serving as an agent, intermediary, or other entity that causes the Internet to be used to bring together a buyer and seller to engage in the dispensing of a controlled substance in a manner not authorized by sections 823(f) of this title or 829(e) of this title;

(D) offering to fill a prescription for a controlled substance based solely on a consumer's completion of an online medical questionnaire; and

(E) making a material false, fictitious, or fraudulent statement or representation in a notification or declaration under subsection (d) or (e), respectively, of section 831 of this title.

#### (3) Inapplicability

(A) This subsection does not apply to--

(i) the delivery, distribution, or dispensation of controlled substances by nonpractitioners to the extent authorized by their registration under this subchapter;

(ii) the placement on the Internet of material that merely advocates the use of a controlled substance or includes pricing information without attempting to propose or facilitate an actual transaction involving a controlled substance; or

(iii) except as provided in subparagraph (B), any activity that is limited to--

Next

Appellate Case: 10-3384     Page: 57     Date Filed: 02/24/2011     Entry ID: 3759318

(I) the provision of a telecommunications service, or of an Internet access service or Internet information location tool (as those terms are defined in section 231 of Title 47); or

(II) the transmission, storage, retrieval, hosting, formatting, or translation (or any combination thereof) of a communication, without selection or alteration of the content of the communication, except that deletion of a particular communication or material made by another person in a manner consistent with section 230(c) of Title 47 shall not constitute such selection or alteration of the content of the communication.

(B) The exceptions under subclauses (I) and (II) of subparagraph (A)(iii) shall not apply to a person acting in concert with a person who violates paragraph (1).

### (4) Knowing or intentional violation

Any person who knowingly or intentionally violates this subsection shall be sentenced in accordance with subsection (b).

### Credits

(Pub.L. 91-513, Title II, § 401, Oct. 27, 1970, 84 Stat. 1260; Pub.L. 95-633, Title II, § 201, Nov. 10, 1978, 92 Stat. 3774; Pub.L. 96-359, § 8(c), Sept. 26, 1980, 94 Stat. 1194; Pub.L. 98-473, Title II, §§ 224(a), 502, 503(b)(1), (2), Oct. 12, 1984, 98 Stat. 2030, 2068, 2070; Pub.L. 99-570, Title I, §§ 1002, 1003(a), 1004(a), 1005(a), 1103, Title XV, § 15005, Oct. 27, 1986, 100 Stat. 3207-2, 3207-5, 3207-6, 3207-11, 3207-192; Pub.L. 100-690, Title VI, §§ 6055, 6254(h), 6452(a), 6470(g), (h), 6479, Nov. 18, 1988, 102 Stat. 4318, 4367, 4371, 4378, 4381; Pub.L. 101-647, Title X, § 1002(e), Title XII, § 1202, Title XXXV, § 3599K, Nov. 29, 1990, 104 Stat. 4828, 4830, 4932; Pub.L. 103-322, Title IX, § 90105(a), (c), Title XVIII, § 180201(b)(2)(A), Sept. 13, 1994, 108 Stat. 1987, 1988, 2047; Pub.L. 104-237, Title II, § 206(a), Title III, § 302(a), Oct. 3, 1996, 110 Stat. 3103, 3105; Pub.L. 104-305, § 2(a), (b)(1), Oct. 13, 1996, 110 Stat. 3807; Pub.L. 105-277, Div. E, § 2(a), Oct. 21, 1998, 112 Stat. 2681-759; Pub.L. 106-172, §§ 3(b)(1), 5(b), 9, Feb. 18, 2000, 114 Stat. 9, 10, 13; Pub.L. 107-273, Div. B, Title III, § 3005(a), Title IV, § 4002(d)(2)(A), Nov. 2, 2002, 116 Stat. 1805, 1809; Pub.L. 109-177, Title VII, §§ 711(f)(1)(B), 732, Mar. 9, 2006, 120 Stat. 262, 270; Pub.L. 109-248, Title II, § 201, July 27, 2006, 120 Stat. 611; Pub.L. 110-425, § 3(e), (f), Oct. 15, 2008, 122 Stat. 4828; Pub.L. 111-220, §§ 2(a), 4(a), Aug. 3, 2010, 124 Stat. 2372.)

Notes of Decisions (7204)

Current through P.L. 111-312 (excluding P.L. 111-259, 111-275, 111-296, and 111-309) approved 12-17-10

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated

Title 21. Food and Drugs (Refs & Annos)

Chapter 13. Drug Abuse Prevention and Control (Refs & Annos)

Subchapter I. Control and Enforcement

Part D. Offenses and Penalties

## 21 U.S.C.A. § 846

### § 846. Attempt and conspiracy

Currentness

### Attempt and conspiracy

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

### Credits

(Pub.L. 91-513, Title II, § 406, Oct. 27, 1970, 84 Stat. 1265; Pub.L. 100-690, Title VI, § 6470(a), Nov. 18, 1988, 102 Stat. 4377.)

Notes of Decisions (3825)

Current through P.L. 111-312 (excluding P.L. 111-259, 111-275, 111-296, and 111-309) approved 12-17-10

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated

Title 21. Food and Drugs (Refs & Annos)

Chapter 13. Drug Abuse Prevention and Control (Refs & Annos)

Subchapter 1. Control and Enforcement

Part D. Offenses and Penalties

### 21 U.S.C.A. § 851

### § 851. Proceedings to establish prior convictions

Currentness

## Proceedings to establish prior convictions

### (a) Information filed by United States Attorney

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

(2) An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

### (b) Affirmation or denial of previous conviction

If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

### (c) Denial; written response; hearing

(1) If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney. The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. The failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1) of this section. The hearing shall be before the court without a jury and either party may introduce evidence. Except as otherwise provided in paragraph (2) of this subsection, the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. At the request of either party, the court shall enter findings of fact and conclusions of law.

Appellate Case: 10-3384    Page: 60    Date Filed: 02/24/2011 Entry ID: 3759318

(2) A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response. Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.

### (d) Imposition of sentence

(1) If the person files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions, the court shall proceed to impose sentence upon him as provided by this part.

(2) If the court determines that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law, the court shall, at the request of the United States attorney, postpone sentence to allow an appeal from that determination. If no such request is made, the court shall impose sentence as provided by this part. The person may appeal from an order postponing sentence as if sentence had been pronounced and a final judgment of conviction entered.

### (e) Statute of limitations

No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.

**Credits**
(Pub.L. 91-513, Title II, § 411, Oct. 27, 1970, 84 Stat. 1269.)

Notes of Decisions (253)

Current through P.L. 111-312 (excluding P.L. 111-259, 111-275, 111-296, and 111-309) approved 12-17-10

End of Document

© 2011 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF SERVICE

This addendum has been submitted for review through the Court's

CM/ECF system on February 24, 2011, to be served electronically upon

counsel registered to receive notification by that system.


/s/ Michael A. Gross
Michael A. Gross